[Civ. No. 20983. Second Dist., Div. Three. Dec. 20, 1955.]

THE COUNTY OF LOS ANGELES, Appellant, v. WIL-
FRED HOE et al., Respondents.

*Assigned by Chairman of Judicial Council.

Harold W. Kennedy, County Counsel, and Milnor E. Gleaves, Deputy County Counsel, for Appellant.

Hodge L. Dolle for Respondents.

WOOD (Parker), J.—This is an eminent domain action by the county of Los Angeles to acquire property in El Monte for the purpose of constructing thereon a courthouse and health building. A jury found that the market value of the property was $19,500. An interlocutory judgment of condemnation was entered, awarding said amount for the property. Plaintiff appeals from the judgment.

Appellant contends that the court erred in denying appellant's motion to strike out certain testimony, and in refusing to make a certain finding.

Mr. Culver, a witness called by defendants, was qualified as an expert appraiser of real property to give his opinion as to the market value of defendants' property. He testified that in his opinion such value, as of January 19, 1954 (when summons was issued), was $21,000. Defendants' counsel asked him to give his reasons for his opinion. In replying he stated, among several other reasons, that one of the most important things that lends value to this property is the general area in which it is located; the area has developed tremendously in the last 10 years; this property, which is on Valley Boulevard, is about a quarter of a mile east of the business center of El Monte; the most logical direction for the business growth of El Monte is easterly along Valley Boulevard, which boulevard is one of the major thoroughfares of Southern California; the freeway is going through El Monte and will cross Valley Boulevard east of Peck Road (about three blocks east of defendants' property); the city of El Monte selected a new site for its city hall just east of defendants' property. On cross-examination he was asked if he investigated to ascertain the purpose for which defendants' property, and other properties in the vicinity, were being acquired. He replied that he found that the property east of, and next to, defendants' property was acquired by the city of El Monte and that the city proposes to construct a new city hall thereon. He was asked if he knew what was being constructed in that civic center area other than the city hall. He replied that he did not go into that. In reply to questions, he said that he did not know there was (to be) a health building; and that he surmised there was to be a court building, since the county was bringing the action. He said further: "I didn't go into it. It would have no bearing on my valuation of this property because my valuation of this property, on the advice of Mr. Dolle [counsel for defendants], would have to be under the assumption that the property

was not being taken for County purposes. In other words, my valuation could not in any way be contingent upon, or influenced by any improvements that were part of this condemnation action.'' He said further that he did take the city hall site into consideration; and that he did not know that there was "to be an integrated Civic Center."

At the close of Mr. Culver's testimony, the plaintiff made a motion that all the testimony of Mr. Culver be stricken out on the ground that he had taken into consideration, in his opinion as to value, the fact that defendants' property was enhanced in value by the imminence of the city hall, which is part of a civic center site that is not a city improvement solely but is a combined civic center, set up by the city of El Monte and the county of Los Angeles, to be acquired jointly with joint responsibility and with public buildings "of each of the bodies to be placed on the Civic Center and integrated into a single plan." For the purpose of the motion, and without objection by defendants, plaintiff offered in evidence (1) a certified copy of an order of the board of supervisors of the county,[1] dated November 24, 1953; (2) a certi-

---

[1]The part of the order which is material here was in substance as follows: "A report by the Chief Administrative Officer . . . dated November 18, 1953, relating to the proposed purchase by the County of certain property owned by the City of El Monte to meet the County's structural and car parking requirements at the El Monte Civic Center, —is presented; and . . . in accordance with recommendations contained in said report, it is ordered as follows:

"1. That the Chief Administrative Officer . . . is hereby authorized to offer the sum of $36,590 to the City of El Monte . . . for the city-owned property shown . . . on plot plan attached to said report.

"2. That the site plan attached to said report indicating locations of the County buildings and the buildings of the City of El Monte, the parking areas and the circulatory driveways . . . are hereby approved as representing the presently agreed construction program between the County of Los Angeles and the City of El Monte.

"3. That in order to provide a further background of understanding with officers of the City of El Monte, the following points of agreement . . . are hereby approved to be accepted by the City of El Monte as a prelude to consummation of the purchase:

"a. That the standards for all construction, either by the County . . . or by the City . . . shall be . . . architecturally harmonious. . . .

"b. That the construction contract for the County Courts Building . . . shall include the driveways, parking spaces, curbs . . . indicated on the plot plan. . . .

"c. That the maintenance of all landscaped areas . . . in the entire development, and maintenance . . . of all car parking adjuncts shall be undertaken by the City of El Monte with cost participation therefor to be a joint responsibility. . . .

"d. That all circulatory driveways within the over-all site shall be for general public use."

fied copy of a letter of November 18, 1953, to said board from Mr. Will, the chief administrative officer of the county; and (3) a "plot layout plan" of the civic center. The motion to strike out the testimony was denied.

Appellant contends that the court erred prejudicially in denying said motion. It argues that the opinion of the witness (Mr. Culver) "was founded upon a consideration of the fact that certain units of a city-county civic center were to be located and built upon land immediately adjacent to the property being condemned for use as part of the same public project." ■ It is the law, as stated by appellant, that in arriving at a determination of the market value of land which is the subject of a condemnation action, it is not proper to consider the increase, if any, in the value of such land by reason of the proposed improvement which is to be made on the land by the condemnor. (See *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63, 75 [20 P. 372, 3 L.R.A. 83]; *United States* v. *Miller*, 317 U.S. 369 [63 S.Ct. 276, 87 L.Ed. 336, 345, 147 A.L.R. 55].) ■ In the present case, however, the witness said that he did not take into consideration any improvement which the county proposed to make on the land it was taking from defendants by condemnation. He said that he took the city hall site into consideration, and he did not know there was to be an integrated civic center. The land upon which it was contemplated that the city hall would be built was acquired by the city on July 1, 1953. On November 24, 1953, the board of supervisors made its above-mentioned order, relative to the *proposed* purchase by the county of certain property owned by the city of El Monte, in which order it was stated: (1) that the chief administrative officer of the county was authorized *to offer* $36,590 to the city for the certain property; (2) that the site plan (attached to the report of the administrative officer) indicating the locations of county and city buildings was approved as representing *the presently agreed construction program* between the county and city; and (3) that certain points of agreement (specifically stated) are approved *to be accepted* by the city *as a prelude to consummation* of the purchase. Several expressions in the order of the board of supervisors establish the preliminary and contingent character of negotiations between the county and city. Portions of such expressions are: "the proposed purchase"; "authorized to offer"; "the presently agreed construction program"; "to be accepted"; and "as a prelude to consummation of the purchase." It thus appears

that the order of the board of supervisors was only a proposal submitted by the county to the city, and that the order did not establish that the county and city were committed to a joint condemnation enterprise or any joint project for the purpose of constructing a joint civic center. There was no other evidence relative to negotiations between the county and city. It is to be noted further that plaintiff's complaint does not indicate that the condemnation of defendants' property was sought under the joint exercise of powers by public agencies, as provided in section 6502 of the Government Code. That section provides: "If authorized by their legislative or other governing bodies, two or more public agencies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the contracting agencies may be located outside this State." The complaint does not indicate that the condemnation of defendants' property was sought as a part of any joint enterprise. The fact that the witness considered the city hall site in arriving at his opinion would not be a sufficient basis for granting the motion to strike out his testimony.

Another argument of appellant, in support of its contention that the court erred in denying said motion to strike out said testimony, is that the witness in forming his opinion as to value relied on a sale of property which occurred seven months after January 19, 1954, the date of valuation herein. Mr. Culver testified that he found that property of A. L. Wood, which was about a block from defendants' property, was sold in August, 1954; he (witness) talked with the seller and the buyer to confirm the sale price of that property; he checked the records for "the last two years," and that sale (Wood) was the only sale in that area on Valley Boulevard (area extending about $\frac{1}{4}$ mile west, and about two blocks east of defendants' property); that sale was helpful in arriving at an opinion of the value of defendants' property; although "I did not base my value on that alone, it was one of the many things that I considered." It does not appear, as appellant asserts, that the witness said that he relied upon that sale in arriving at his opinion. He said that sale was helpful, that his opinion was not based on it alone, and it was one of many things he considered. This action was tried on September, 1954—about a month after that sale. ■ Section 1249 of the Code of Civil Procedure provides: "For the purpose of assessing compensation and damages [in an eminent domain action] the right thereof

shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation for all property to be actually taken. . . ." Said section is a procedural statute. "[T]he matter of fixing the time as of which values are to be determined is entirely one of procedure." (*City of Los Angeles* v. *Tower,* 90 Cal.App.2d 869, 873-874 [204 P.2d 395].) There is no fixed formula determining when proffered evidence is not pertinent to the question of value by reason of the time element. The question must be decided upon consideration of all the circumstances of the particular case. "No general rules can be laid down as to the degree of similarity required to exist between the properties, and as to the nearness in respect of time and distance, since these are matters resting largely in the discretion of the trial judge." (32 C.J.S., Evidence, § 593, p. 447.) The time element goes merely to the weight of the opinion. (See *People* v. *Vinson,* 99 Cal.App.2d 100, 102 [221 P.2d 161].) The fact that the witness considered the sale which was made in August would not be a sufficient basis for granting the motion to strike out his testimony.

The court did not err in denying the motion to strike out the testimony of Mr. Culver.

Furthermore, even if it had been improper for the witness to consider the city hall site and the August sale, the motion to strike out all of his testimony was properly denied. Of course it is undisputed that much of his testimony was proper. The motion was general, applying to all his testimony. "A motion to strike must be precise, definite, and certain. It must be directed with precision to the matter sought to be stricken. [Citation.] Where testimony is admitted, some of which is relevant and competent and it is intermingled with that which is improper, a motion to strike should be directed to the portion attacked so that no uncertainty may remain as to the testimony challenged. [Citation.] The burden is on the party making the motion to make the proper motion." (*People* v. *Loop,* 127 Cal.App.2d 786, 800 [274 P.2d 885].)

Appellant also contends that the court erred in refusing to make a finding "concerning the fact of a joint, integrated civic center project," and that defendants' property was being acquired as a part of such joint project. Paragraph X of proposed findings submitted by appellant was in substance as follows: That the real property being condemned

herein is a portion of a site for a joint civic center project being constructed through the joint efforts and mutual agreement between the city of El Monte and the county of Los Angeles; said agreement was consummated by said public bodies prior to the issuance of summons and on or before October 16, 1953; pursuant to said agreement portions of said site were to be acquired directly by the city and portions thereof to be acquired directly by the county; upon the portions to be acquired by the county there were to be constructed a building for the municipal court of the El Monte Judicial District and a building to house a branch of the county health department; upon the portions to be acquired by the city there were to be erected a city hall and a police building; the parking facilities for the entire site, and the landscaping and building arrangement, will be constructed as an integrated unit to serve all the buildings on the site; the standards for all construction on the site, according to said agreement, are to be architecturally harmonious; the maintenance of all landscaped areas and of all car parking adjuncts in the entire development, under said agreement, are to be undertaken by the city with cost participation to be the joint responsibility of both bodies; all circulatory driveways within the site, under said agreement, are to be for general public use; said plan and agreement have been a matter of public record since about November 18, 1953 The judge struck out said proposed paragraph X and refused to make it. Appellant argues to the effect that the issue of fact embodied in the proposed paragraph X arose in the course of the trial—by facts appearing in the course of Mr. Culver's testimony; and that appellant was entitled to have such a finding. As above shown, in discussing Mr. Culver's consideration of the city hall site, the pleadings did not raise such an issue, and the evidence would not support such a finding. As above stated, the order of the board of supervisors was only a proposal submitted by the county to the city; the order did not establish that the county and city were committed to a joint condemnation enterprise or any joint project for the purpose of constructing a joint civic center; and there was no other evidence relative to negotiations between the county and city. The court did not err in refusing to make the finding.

Mr. Hoe, one of the owners of the property herein, testified that he was born and reared near the property (within a few blocks thereof); he is 43 years of age and he lived

near the property until 1946; in his opinion the market value of the property on January 19, 1954, was $23,000. Mr. Martin, an expert appraiser called as a witness by appellant, testified that in his opinion the market value of the property on said date of $15,500.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.