[Civ. No. 23377.   Second Dist., Div. Three.   Apr. 16, 1959.]

LOS ANGELES CITY HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Plaintiff and Appellant, v. HEIJI KITA et al., Defendants and Appellants.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Plaintiff and Appellant.

Hodge L. Dolle, John Y. Maeno and Earle K. Stanton for Defendants and Appellants.

VALLÉE, J.—Proceeding in eminent domain. A jury found the market value of the property sought to be condemned. Judgment of condemnation followed. On motion of plaintiff a new trial was granted. The order reads:

"Plaintiff's motion for a new trial as to Parcels 1 and 2, heretofore submitted, is now by the court granted on the ground of error in law, occurring at the trial and excepted to by the plaintiff, and particularly error in permitting enquiry on cross-examination of an expert witness for plaintiff as to an offer to purchase certain property as embodied in Defendants' Exhibit L."

Defendants appeal from the order. Plaintiff appeals from the judgment.

The complaint was filed August 30, 1956. Plaintiff sought to condemn two parcels, called I and II. Adjoining parcel II there were about 33 acres not sought to be condemned, similar to the property being condemned, and owned by some of the defendants. Plaintiff called one Evans, a real estate expert, who testified to his opinion of the market value of the property sought to be condemned. On cross-examination, over plaintiff's objection,[1] counsel for defendants was permitted to question Evans with respect to a document, sometimes called an "offer" in the record,[2] made September 16, 1957, with respect to the 33 acres, and to read the document to Evans in the presence of the jury. The document was not addressed to the owners of the 33 acres but to two real estate brokers.[3]

---

[1] The objection was on these grounds: the offer was made a year and a half after the filing of the complaint; "it pertains not to the subject property but to the remainder of the original 60-acre tract exclusive of the portion being taken by the school''; "it is not a firm offer. It has a condition in it''; "it is not a fair test neither of the witness's opinion of value and his testimony is not properly to be considered by the jury in arriving at their opinion of market value''; "an offer was made in one year after the date of valuation and it was made for other property; it is not an unconditional offer, the acceptance of which would ripen into a contract binding on both parties''; "the asking of questions on this merely leads us into collateral matters, one of which is the bona fideness of the offer itself.''

[2] While the document is not an offer but an authorization to make an offer, for convenience we will refer to it as an offer as was done below.

[3] The offer reads:

"THE ROTHSCHILD INVESTMENT COMPANY
333 South La Cienega Boulevard
Los Angeles 48, California
Oleander 5-6440    OLympia 2-9097
"September 16, 1957

"Richard T. St. John Co.      Spitzer Company
8664 Wilshire Boulevard       5225 Wilshire Blvd.
Los Angeles, California       Los Angeles 36, Calif.

REALTORS

"Gentlemen:

"This will authorize you to purchase on our behalf that certain property situated in the County of Los Angeles, south of Braddock Street and east of McConnell Avenue now owned by a Mr. or Messrs. Kita, the total land parcel being approximately sixty (60) acres. Our purchase to be that portion of the sixty (60) acre parcel which shall be remaining after removing from same that portion which is now being purchased or which is pending condemnation for use as a public school. The exact property to be determined by survey and a legal description satisfactory to buyer and seller to be established.

"We agree to purchase this property at a gross price of Twenty-Thousand ($20,000.00) Dollars per acre, of which total price we agree

Counsel for defendants assured the court he proposed to show the offer was delivered to the owners of the 33 acres. At this point the court instructed the jury as stated in the margin.[4] Counsel for defendants then read the offer to the witness

---

to pay twenty-five per cent (25%) in cash through an escrow to be opened at the Title Insurance and Trust Company main office for a period not to exceed ninety (90) days. Said escrow to be opened within ten days of the signed approval by the sellers of this purchase agreement, during which ten day period we shall have the right to make soil tests at our expense, with the further right that this offer is contingent upon those tests being satisfactory to us; if not satisfactory we shall be privileged to withdraw from this agreement without liability.

''At the close of said escrow in which twenty-five per cent (25%) of the total purchase price had been paid in cash, twelve and one-half per cent (12½%) of the total land area shall be transferred through grant deed free and clear of any encumbrances to the purchasers. Further parcels of land shall be released from encumbrances on payment of sums calculated at the rate of Twenty-five Thousand ($25,000.00) Dollars per acre to be released.

''The trust deed to be executed at the close of the escrow for seventy-five per cent (75%) of the total purchase price which calls for five (5) equal annual installments including interest at five per cent (5%) on the unpaid balance, at the end of which five year period the total shall have been paid. The before-mentioned Twenty-five Thousand ($25,000.00) Dollars per acre payment to secure accelerated land releases shall apply and be part of the annual payments due on the trust deed described above. Said trust deed shall provide that the total amount may be paid at any time without penalty.

''The seller shall further agree that for such land as may be required for dedication to the City or County for street improvements, providing the purchasers assume all costs for such street improvements, the seller shall join with the buyer in such street dedication without further land payment being required for such joint dedication, but this action shall in no way diminish or reduce the gross land price to be paid for the property purchased as determined by original survey.

''This offer is contingent upon the seller's ability to furnish a clear and marketable title insured by the Title Insurance and Trust Company. Any conditions, covenants or restrictions of record shall be subject to the approval of the buyer, and if not so approved the buyer may withdraw from the purchase without liability. The purchase shall further require that land taxes shall be prorated as of close of escrow. The purchase to be made subject to the present zoning. Land to be purchased in an 'as is' condition and delivered free and clear of any lien or encumbrances other than that described above.

''As evidence of firm intention we attach hereto our check in the amount of Fifteen Thousand ($15,000.00) Dollars to be deposited in escrow when said escrow is opened.

''This offer shall be valid for only seven (7) days from this date. If not accepted in writing by 6 P. M. Monday, September 23, 1957 it shall be null and void and of no further effect.

''THE ROTHSCHILD INVESTMENT Co.
''[Signature illegible]''

'''I will instruct the jury now any offer to which inquiry is made of value whatsoever but it is proper to inquire of the witness with respect this witness is not to be considered by the jury as any evidence of market

Evans in the presence of the jury. Evans, in response to questions by counsel for defendants, testified: he first saw a copy of the offer ''about three weeks or a month ago''; he did not talk to the offerer at the request of one of the brokers named in the document, or to defendants, or to their attorney; he did not give it any consideration; it was a contingent offer, with two contingencies. On redirect Evans gave a number of reasons why he did not give any consideration to the offer. Counsel for defendants introduced the written offer in evidence.

The next expert called by plaintiff testified on direct: in preparation for coming to court, he heard about the offer and investigated it but not in connection with his appraisal; he talked to one of the persons to whom the offer was addressed; the property referred to in the offer was not owned by defendants; it had no influence on his opinion of the market value of the land.

No evidence was ever offered to prove that the offer had been delivered to the owners of the 33 acres or to their attorney or that the owners or their attorney were made aware that the offer had been made. Among the instructions given at the close of the evidence was one that offers to buy other properties are not competent evidence of market value and may not be considered as evidence of the fair market value of the properties sought to be condemned.

It is clear from the order granting the new trial, and the parties appear to agree, that the sole ground on which a new trial was granted was that the court erred in permitting counsel for defendants to read the so-called offer in the presence of the jury and in permitting him to question the witness Evans with respect to it. Defendants assert the court did not err in this respect and therefore it was error to grant a new trial on that ground. They argue that the offer was tendered in evidence not for the purpose of establishing value but for the sole purpose of testing the reliability and credibility of the witness' testimony, that the court so instructed the jury, and that the evidence was admissible for that purpose.

Plaintiff argues extensively, citing numerous authorities,

---

to his knowledge and consideration of the offer and which consideration about to be made is for one limited purpose only, namely, insofar as it bears upon the credibility of the witness, that is the weight to be given to his testimony. Again, it is not evidence of market value and cannot be considered for that purpose but it is limited to the sole purpose as it bears upon the credibility of the witness and the weight to be given his testimony.''

that offers to purchase similar land are not admissible to show the value of the land taken. That is not the question. The question is simply: Did the trial court abuse its discretion in granting a new trial because it considered it had abused its discretion and therefore had erred to the prejudice of plaintiff in permitting counsel for defendants to read the so-called offer to the witness Evans in the presence of the jury and to interrogate him with respect thereto?

An expert as to value may be cross-examined in order to test the accuracy and worth of his opinion provided such examination is not unreasonable. (*City of Los Angeles* v. *Deacon*, 119 Cal.App. 491, 494 [7 P.2d 378]; *County of San Mateo* v. *Christen*, 22 Cal.App.2d 375, 379 [71 P.2d 88]; *City of San Diego* v. *Boggeln*, 164 Cal.App.2d 1, 7-8 [330 P.2d 74]; 98 C.J.S. 161, § 390.) *People* v. *La Macchia*, 41 Cal.2d 738 [264 P.2d 15], holds that evidence of offers to purchase similar property may properly be presented on cross-examination for the purpose of testing the weight to be accorded an opinion as to value. The court stated (p. 747):

"Another asserted violation of the rule prohibiting evidence as to offers to purchase occurred during the cross-examination of the owners' witness Challen. A question of counsel for the state was, '[S]o do I understand that in your opinion this highway frontage on these parcels would be around seven, eight thousand dollars an acre if placed upon the open market for sale?' Challen replied, 'I investigated one parcel here that I had heard an offer had been made on . . ., as a matter of fact, Mr. Pelliccione was offered $7,000 for 200 feet.' In denying a motion to strike out the statement upon the ground that it was not responsive, the court said, '[I]t's explanatory of his answer.'

"In its briefs the state challenges this testimony upon the sole ground that it violates the rule against the admission of offers to purchase. But the questioning was upon cross-examination, and evidence of an offer may properly be presented at such time for the purpose of testing the weight to be accorded an opinion as to value. Under the circumstances shown by the record the trial court properly refused to strike the testimony."

*People* v. *Union Machine Co.*, 133 Cal.App.2d 167 [284 P.2d 72], follows *People* v. *La Macchia, supra*, 41 Cal.2d 738, and holds that an expert may be cross-examined with respect to specific offers for the property sought to be condemned which he has not investigated. It also holds that it is proper to

exclude evidence relating to an offer which included the land to be condemned and other land which was not sufficiently specified and of the specification of which the witness had no personal knowledge.

In *Pao Ch'en Lee* v. *Gregoriou*, 50 Cal.2d 502 [326 P.2d 135], a son of the defendant Mrs. Gregoriou offered in open court to purchase the property involved for $26,000 and tendered a cashier's check for $10,000 in part payment. The court stated (p. 505):

"The check and offer were properly received as evidence of the present value of the property. (*County of Los Angeles* v. *Faus*, 48 Cal.2d 672 [312 P.2d 680].) However, it was not conclusive on the court, since the weight of such evidence and the bona fides of the offer were questions of fact for the determination of the trier of fact. [Citation.] In the instant case the trier of fact may well have concluded, in view of the offeror's relationship to one of the defendants, that the offer was a mere attempt to accomplish restitution by indirection, thus avoiding the payment of damages for the fraud, and that it did not represent the true value of the property."

■ The trial court has a large discretion in allowing cross-examination of an expert witness as to value since the object of such examination is principally to test the knowledge and competency of the witness and whether he has taken into consideration all the elements of value in arriving at his conclusion. (*Laguna Salada etc. Dist.* v. *Pacific Dev. Co.*, 119 Cal.App.2d 470, 475 [259 P.2d 498].) ■ The general rule that the scope of permissible cross-examination rests to a considerable extent in the discretion of the trial court prevails in condemnation proceedings. (17 Cal.Jur.2d 701, § 135.)

*People* ex rel. *Dept. Pub. Wks.* v. *Murata*, 161 Cal.App.2d 369 [326 P.2d 947], says (p. 375):

"[W]e interpret the Faus decision [*County of Los Angeles* v. *Faus*, 48 Cal.2d 672 (312 P.2d 680)] as holding also that a 'wide discretion' must be granted the trial judge in determining the admissibility of evidence of other sales; that the laying of appropriate foundations should be required to keep the admission of such evidence 'within safeguarding limits' and that evidence of the price paid by a condemner should be admitted as evidence of value only after the trial judge has been satisfied 'that the price paid was sufficiently voluntary to be a reasonable index of value.' "

■ If the evidence in question is of slight weight, the judge is justified in excluding it entirely because of its preju-

dicial or dangerous effect, especially if there is reason to believe that the real object in offering it is to get before the jury declarations of other points for which it is not competent evidence. (18 Cal.Jur.2d 567, § 126.)

■ Much has been said about the propriety of receiving in evidence unaccepted offers to buy similar property. An offer to pay a certain amount does not necessarily involve an estimate that such is its full value and should have been taken into consideration in forming an opinion of market value. At best, such offers are but expressions of opinion. They are a species of indirect evidence of the opinion of the offerer as to the value of the land. An unaccepted offer places before the jury an absent person's declaration or opinion of value while depriving the adverse party of the benefit of cross-examination. The offerer may have such slight knowledge on the subject as to render his opinion of no value. He may have wanted the land for some particular purpose disconnected with its value. Pure speculation may have induced the offer, a willingness to take chances that some new use of the land might later prove profitable. The person making the offer may not have been competent in a legal sense to express an opinion on the subject. Offers may be glibly made without serious intention or the required resources. The offer may contain contingencies, as in the present case. The area for collateral inquiry is far broader than in the case of consummated sales, as is also the opportunity for collusion and fraud. The assertion that the offerer tendered his money might give such hearsay opinion more weight with the jury than an opinion given by a witness before them, not thus supported. ■ If evidence of an unaccepted offer is to be received, it is important to know whether the offer was bona fide and made by a man of good judgment acquainted with the value of the property, and whether made with reference to market value or to supply a particular need or to gratify a fancy. Unaccepted offers are unsatisfactory, easy of fabrication, and even may be dangerous in their character.[5] ■ In the recent case

[5]See *Sharp* v. *United States*, 191 U.S. 341 [24 S.Ct. 114, 48 L.Ed. 211, 213]; *N.J. Turnpike Authority* v. *Bowley*, 27 N.J. 549 [143 A.2d 558, 562]; *Hine* v. *Manhattan R. Co.*, 132 N.Y. 477 [30 N.E. 985, 986, 15 L.R.A. 591]; *Sherlock* v. *Chicago, B. & Q. R. Co.*, 130 Ill. 403 [22 N.E. 844, 845]; *City of St. Louis* v. *Gerhart Realty Co.*, 328 Mo. 103 [40 S.W.2d 661, 663]; *Baynham* v. *State Highway Department*, 181 S.C. 435 [187 S.E. 528, 535]; *Chicago M. & P. S. Ry. Co.* v. *True*, 62 Wash. 646 [114 P. 515, 517]; *Commonwealth* v. *Combs*, 229 Ky. 627 [17 S.W.2d 748, 749]; 84 L.Ed. 249; 4 Nichols on Eminent Domain, 3d ed., 72, § 12.3113[3].

of *Sacramento etc. Drainage Dist.* v. *Jarvis,* 51 Cal.2d 799, 804 [336 P.2d 530], it is said, "The rule is settled that in a condemnation proceeding a witness cannot state his *opinion* of the value of neighboring land."

The granting of a motion for a new trial in condemnation proceedings rests within the discretion of the trial judge, and a reviewing court will not interfere with the decision of the trial court in the absence of a clear abuse of discretion. (*San Francisco* v. *Tillman Estate Co.,* 205 Cal. 651, 654-656 [272 P. 585] ; 18 Cal.Jur.2d 64, § 333.) On an appeal from an order granting a new trial all presumptions favor the order; the order will be affirmed if it may be sustained on any ground. (*Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165, 169 [153 P.2d 338].) When a new trial is granted because of an error in law occurring at the trial the order will not be reversed unless it can be said the ruling was an abuse of discretion. (*Nance* v. *Fresno City Lines, Inc.,* 44 Cal.App. 2d 868, 872-873 [113 P.2d 244] ; *Middleton* v. *California St. Cable Ry. Co.,* 73 Cal.App.2d 641, 646-647 [167 P.2d 239] ; *Jones* v. *Scurlock,* 96 Cal.App.2d 201, 203 [214 P.2d 599].)

If the error can possibly have been prejudicial, the trial court must consider its probable effect and decide the motion for a new trial accordingly. (*Brown* v. *George Pepperdine Foundation,* 23 Cal.2d 256, 262 [143 P.2d 929].) "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears, and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance." (*Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 159 [323 P.2d 391] ; *Balthrop* v. *Atchison, T. & S. F. Ry. Co.,* 142 Cal.App.2d 823, 826 [299 P.2d 341].)

The document which was read to plaintiff's expert, Evans, in the presence of the jury was not in fact an offer. It was an authorization to two real estate brokers to make an offer for 33 acres of similar property adjoining one of the parcels sought to be condemned, owned by some of the defendants. It was made more than a year after the date of valuation. It was to be contingent on satisfactory soil tests. The offer was to be for the payment of 25 per cent of the purchase price in cash and the balance in five equal annual installments with 5 per cent interest, secured by a deed of trust with the privilege of paying the total amount at any time; and the

seller was to give further releases, after initial transfer of 12½ per cent of the total area, on payment of $25,000 an acre. The proposition was to be "valid" for seven days from September 23, 1957. There was no evidence that any such offer was ever made to the owners of the 33 acres.

The values given by the experts were:

|  | Parcel I | | Parcel II | |
|---|---|---|---|---|
| | *Plaintiff's Experts* | | | |
| | *Total* | *Per Acre* | *Total* | *Per Acre* |
| Evans | $175,000.00 | $15,600.00 | $260,000.00 | $16,250.00 |
| Welborne | 145,600.00 | 13,000.00 | 240,000.00 | 15,000.00 |
| | *Defendants' Experts* | | | |
| Seeley | $247,347.00 | $22,054.76 | $352,653.00 | $22,054.76 |
| Ross | 252,500.00 | 22,500.00 | 360,000.00 | 22,500.00 |
| Verdict | $236,565.00 | $21,009.36 | $343,914.00 | $21,508.07 |

The so-called offer was at a gross price of $20,000 per acre.

In view of what has been said, the learned trial judge reasonably may have concluded he abused his discretion and therefore erred to the prejudice of plaintiff in permitting counsel for defendants to read the document to Evans in the presence of the jury and to interrogate him with respect thereto. The testimony as to the value of the property sought to be condemned was in irreconcilable conflict. The effect of the cross-examination was to get before the jury the hearsay declaration of a third party as to value, not supported by oath, and without opportunity for cross-examination. The verdict was slightly higher than the offer. While theoretically the evidence was proffered solely for the purpose of testing the witness' opinion as to value and the jury was so instructed, the trial judge may have reasonably concluded that it had been accepted by the jury as affirmative evidence of value. He may have felt the jury was confused and misled. He may have felt that confusion was inevitable when the jurors heard the evidence and were then told they could not base the value of the property on that evidence. He may have felt that the offer, made more than a year after it was known the adjoining property was to be condemned, could not affect the accuracy or worth of Evans' opinion by reason of the adjoining property's having risen in value after it became known the condemnation proceeding was in progress. (See *Page* v. *Oklahoma City*, 129 Okla. 28 [263 P. 448, 451]; *Department of Public Wks. & Bldgs.* v. *Finks*, 10 Ill.2d 15 [139 N.E.2d 267,

269] ; *City & County of Denver* v. *Lyttle,* 106 Colo. 157 [103 P.2d 1, 3-4].)

The trial court here has determined it abused its discretion and thus erred in permitting the reading of the so-called offer to the witness Evans in the presence of the jury and in permitting cross-examination of Evans with respect thereto, and that such error prejudiced plaintiff's cause. This court cannot ascertain or determine what weight the evidence had with the jury. The trial judge has determined it had great weight. We cannot say, in light of the record, that he was wrong in so holding.

The order granting a new trial is affirmed. The appeal from the judgment is dismissed.

Shinn, P. J., concurred.

Wood (Parker), J., did not participate.