[Civ. No. 23719.   Second Dist., Div. One.   Oct. 9, 1959.]

COVINA UNION HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Appellant, v. RUTH JOBE et al., Respondents.

Harold W. Kennedy, County Counsel, and A. R. Early, Deputy County Counsel, for Appellant.

Holloway Jones, Jack M. Howard, Norval Fairman, A. Matthew Raggio, Stephen W. Hackett and Robert E. Reed as Amici Curiae on behalf of Appellant.

Hill, Farrer & Burrill and Albert J. Day for Respondents.

FOURT, Acting P. J.—This is an appeal by the plaintiff from a judgment in an eminent domain proceeding.

The plaintiff sought to acquire an 18.381-acre tract of land improved with a residence and orange grove, for school purposes. The property was located at the southwest corner of the intersection of Cypress Street and Azusa Avenue in Los Angeles County adjacent to the city of Covina and was zoned A-1 agricultural.

The area surrounding the property in question for some years previously had been used for citrus groves. In recent years the area, except for Azusa Avenue property, changed into a single family residential district. A transition had taken place by the date of valuation in 1957 along Azusa

Avenue in that there was commercial development of properties. Azusa Avenue was to be widened to a 100-foot state highway. The plaintiff contends that the judge erred in: (A) Admitting in evidence: 1. prices paid by the State of California for narrow strips of land purchased for the purpose of widening an existing highway; 2. the asking and answering of leading questions on cross-examination regarding the price paid by a governmental body in settlement of pending condemnation litigation; 3. the sales prices of relatively small lots, many zoned for commercial use, as evidence of the value of the 18-acre tract zoned against commercial use; (B) Permitting the asking and answering of leading questions on cross-examination of: 4. the prices at which 17 lots were listed for sale, 16 of them being less than 5 percent of the size of the tract condemned; 5. an alleged offer to buy land other than that condemned; 6. an appraisal of property adjoining that condemned which was made by someone other than the witness; and 7. the terms of a 90-day option to lease property other than that condemned.

Defendants testified that the total value of the property was $367,000 or at $20,000 per acre. One of the defendant's expert witnesses testified that the total value was $340,000 and the other said it was $350,000 or at $18,500 and $19,000 per acre respectively. One of the plaintiff's expert witnesses testified that the total value of the property was $193,000 or at $10,500 per acre and the other witness stated that the total value was $200,000 or at $10,875 per acre. The jury verdict set the value at $290,000 or at $15,777 per acre. It is fairly obvious that the verdict was a compromise decision.

The state made three purchases of strips of land from the defendants, the first of which was 20 feet wide and about 1,300 feet long (0.6 acre), for $15,246 per acre; the second strip was about 17 feet wide (0.05 acre), at the rate of $130,680 per acre and the third strip at the rate of $65,340 per acre (0.17 acre).

With reference to the item of A2 plaintiff's contentions, plaintiff asserts that on the cross-examination of one of its experts the trial court permitted counsel for the defendants to ask a leading question setting forth the amount paid by the Covina School District (not the plaintiff here) in settlement of another condemnation case.

With reference to plaintiff's contention A3, it asserts that testimony was offered by the defendant and received over plaintiff's objection regarding the sales price of lots which

ranged from 1 percent to 6½ percent of the size of the parcel condemned.

With reference to plaintiff's B4, it asserts that defendant's counsel was permitted on cross-examination to inquire of plaintiff's experts with reference to listings of properties which were very much smaller than the parcel condemned. The evidence in this connection was received for the limited and sole purpose of testing the investigation made by the plaintiff's expert witnesses.

As to the contention in B5, plaintiff asserts that, on cross-examination of one of its experts, counsel for defendants asked a leading question to the effect that the owner had been "offered $60,000.00 for a corner 150 x 150 at Workman and Azusa Avenue" and that the court refused to give an instruction to the effect that in determining fair market value the jury should give no consideration whatever to any offers alleged to have been made to purchase other properties.

With reference to plaintiff's B6 item, it contends that the court permitted defendant's counsel in cross-examining one of its experts to ask a leading question setting forth the amounts and a breakdown thereof, at which some other appraiser had appraised property purchased by the state from the defendants. The property about which the examination was concerned was adjacent to but not included within the property which plaintiff's expert witnesses had appraised.

In the last contention of plaintiff, namely B7, it asserts that in cross-examination of one of its witnesses the defendant's counsel asked leading questions pertaining to an option to lease property other than the condemned property.

A complete reading of the entire record in this case leads us to the conclusion that no reversible error was committed and that under the circumstances the judgment should be affirmed.

In considering plaintiff's first contention, we find that in effect plaintiff believes that the sale of the strip involved was not a voluntary sale because the state had to have the particular parcel involved and no other parcel would satisfy its requirements. In *County of Los Angeles* v. *Faus*, 48 Cal.2d 672 [312 P.2d 680], the court said among other things:

" '[E]vidence of the price paid [by the condemnor] should come in if the condemnor can satisfy the judge that the price paid was sufficiently voluntary to be a reasonable index of

value. In any event, the sale must be genuine, and the price must be actually paid or substantially secured.' (See also dissenting opinion of Carter, J. in *City of Los Angeles* v. *Cole*, 28 Cal.2d 509, 523-524 [170 P.2d 928].) ''

In the dissent referred to approvingly, Justice Carter said at page 523:

''In my opinion the cases heretofore cited which hold that the sales of other similar property are not admissible to prove value are clearly unsound and should be overruled. Their force is considerably weakened if not destroyed by the addition in 1937 of section 1872 to the Code of Civil Procedure. It reads: 'Whenever an expert witness gives his opinion, he may, upon direct examination, be asked to state the reasons for such opinion, and he may be fully cross-examined thereon by opposing counsel.' The main purpose of that section was to do away with the former court made rule that an expert witness could not give his reasons. *But if he may give his reasons those reasons may consist of reference to prices paid in sales of similar property in the vicinity.* Certainly, he could give such reason for he could be asked on cross-examination concerning other sales. Being able to testify to these sales as reasons, they are direct and probative evidence on the value of the property in controversy.

''In the instant case the challenged instructions to the jury dealt with the evidence of the price paid at sales of other property to the condemner in acquiring property for its project. On the general theory evidence of those sales was probative evidence of value. The only question is whether it should be excluded because it violated the substantive law test of market value; that is, a buyer and seller willing to deal and not acting under compulsion. That, however, is a matter going to the weight or value of the evidence not its admissibility and can properly be governed by the discretion of the trial judge. (See Wigmore on Evidence (3d ed.), vol. II, p. 505, § 463; 4 Cal.L.Rev. 151, 152.) If the circumstances of a particular sale are such that it was not a free bargain between the parties it might not be very valuable in ascertaining market value, but that depends upon the facts. All sales merely because they are to the condemner are not under fear or compulsion or lacking in freeness. The condemner may well be paying what it feels the property is worth and the buyer selling for a price he believes is fair. The only case in California that declares evidence of such sales inadmissible

is *City of San Luis Obispo* v. *Brizzolara,* 100 Cal. 434 [34 P. 1083], and there it was conceded that evidence relating to other sales could be *developed on cross-examination.* If it was proper there as bearing on value it certainly was pertinent on direct examination. There are authorities declaring evidence of sales to the condemner admissible in a condemnation suit. (*Shaw* v. *Monongahela Ry. Co.,* 110 W.Va. 155 [157 S.E. 170] ; *Hadley* v. *Board of Chosen Freeholders of Passaic County,* 73 N.J.L. 197 [62 A. 1132] ; *Ross* v. *Commissioners of Palisades Interstate Park,* 90 N.J.L. 461 [101 A. 60] ; *Eames* v. *Southern New Hampshire Hydro-Electric Corp.,* 85 N.H. 379 [159 A. 128] ; *Louisiana Highway Commission* v. *Merchant* (La.App.), 174 So. 696; *Washington Home* v. *Hazen,* 70 F.2d 847; 118 A.L.R. 869, 898; Orgel on Valuation under Eminent Domain, § 146.) In *Eames* v. *Southern New Hampshire Hydro-Electric Corp., supra,* page 130, the court said: 'What the courts, holding to the majority view [that other sales to the condemner are not admissible], have seemingly done, is to adopt the mere pronounced phenomena incident to sales to a condemner as a conclusive test of their probative character. Although such sales are less likely to have useful evidentiary value than sales to strangers, no logical reason in principle is perceived why they should not have the same treatment. Their relative immunity from irrelevant influences is merely a matter of degree, and their reasonable freedom therefrom purely a matter of proof. The test of the probative character of a given sale of either class is to be found in answer to the inquiry whether the motivating circumstances influencing the parties thereto were such as probably to materially affect the price paid, and therefore to destroy its usefulness as a standard of value.' ''

In this case it is apparent that the defendant satisfied the trial judge that the price paid under the particular circumstances was sufficiently voluntary to be a reasonable index of value; that the sales were recent, without collusion, duress or compulsion and were relevant and material to the issue before the court. Our reading of the entire record brings us to the same conclusion.

It was said in *Curley* v. *Mayor of Jersey City,* 83 N.J.L. 760 [85 A. 197, 43 L.R.A. N.S. 985], among other things:

''. . . *But, in the absence of extraordinary circumstances, we are unable to see, as a general rule, why private sales to parties having the right to condemn do not come quite as near*

*representing in their results true market value as to such sales made between parties neither of whom have this power."*

■ The plaintiff at the time of trial made the objection among others that such evidence constituted hearsay testimony. An expert witness is permitted to rely upon hearsay in the total of that which he uses to make up his opinion. (See *McElligott* v. *Freeland,* 139 Cal.App. 143, 158 [33 P.2d 430]; *Hammond L. Co.* v. *County of Los Angeles,* 104 Cal. App. 235, 248 [258 P. 896]; *Betts* v. *Southern California Fruit Exchange,* 144 Cal. 402, 409 [77 P. 993]; *United States* v. *5139.5 Acres of Land,* 200 F.2d 659; *District of Columbia* v. *61 Parcels,* 235 F.2d 864.)

■ The plaintiff presently complains about the evidence of the strips purchased by the state upon the ground, among others, that the strips were not comparable to the condemned property in size and shape. No objection was made upon such grounds in the trial court. (See *Estate of Pierce,* 32 Cal.2d 265, 273 [196 P.2d 1]; *Bundy* v. *Sierra Lumber Co.,* 149 Cal. 772, 775 [87 P. 622]; *Parlier Fruit Co.* v. *Fireman's Fund Insurance Co.,* 151 Cal.App.2d 6, 15 [311 P.2d 62]; *Bank of America* v. *Taliaferro,* 144 Cal.App.2d 578 [301 P.2d 393]; *Attebury* v. *Wayland,* 73 Cal.App.2d 1, 4 [165 P.2d 524]; *Keim* v. *Berelson & Co.,* 105 Cal.App.2d 154, 162 [233 P.2d 123]; *Brumley* v. *Flint,* 87 Cal. 471 [25 P. 683].)

Further, the strips so sold were originally and immediately prior to this case part and parcel of the property of the defendants and but for the widening of the street might well have been taken by the plaintiff for school purposes in this particular proceeding. (See *Bagdasarian* v. *Gragnon,* 31 Cal. 2d 744, 758 [192 P.2d 935].)

■ Considering next the matter of evidence of settlement of other litigation. The problem came about over questions having to do with the purchase of a parcel of about 17 acres by the Covina School District. Counsel for the plaintiff had asked one of defendant's experts if he knew of the sale to the Covina School District and the witness answered that he did not know of it nor had he appraised the property. One of plaintiff's experts testified on his direct examination about the sale, its location, zoning and that the price was $116,000. The second expert of the plaintiff also investigated the sale in question and testified at length about the property. On cross-examination of the plaintiff's first expert witness he stated that he had appraised the property for a public body,

as to frontage on Azusa Avenue and its depth and what its highest and best use was.

The appellant now seeks to have this court take judicial notice of the fact that a condemnation suit had been filed upon the property in question and that therefore the evidence should not have been introduced. No evidence was offered at the time of trial of the fact that a condemnation action had been so filed. We are not inclined under the circumstances to rule that the testimony was improperly received. (See *Estate of Gosnell,* 63 Cal.App.2d 38, 40 [146 P.2d 42] ; *Plum* v. *Indian Valley Bank,* 118 Cal.App. 13 [4 P.2d 543] ; *Nash* v. *Harris,* 57 Cal. 242.)

No instruction on the matter was requested by the plaintiff and plaintiff cannot now complain because no such instruction was given. (See *Johnson* v. *Matson Navigation Co.,* 163 Cal.App.2d 336 [329 P.2d 375] ; *Shehtanian* v. *Kenny,* 156 Cal.App.2d 576 [319 P.2d 699] ; *Barrera* v. *De La Torre,* 48 Cal.2d 166 [308 P.2d 724].)

Further, under some circumstances the prices paid by a body having the power to condemn, for land other than that involved in this particular case might well have been inquired into on cross-examination. (See *City of San Luis Obispo* v. *Brizzolara, supra,* 100 Cal. 434 [34 P. 1083] ; *City of Los Angeles* v. *Cole, supra,* 28 Cal.2d 509 [170 P.2d 928] ; *People* v. *Murata,* 161 Cal.App.2d 369, 376 [326 P.2d 947].)

By the nature of things a wide latitude should be allowed on cross-examination of expert witnesses to test their reasons and the validity of their opinions. (See *People* v. *Pacific Gas & Electric Co.,* 27 Cal.App.2d 725, 732 [81 P.2d 584] ; *Santa Ana* v. *Harlin,* 99 Cal. 538 [34 P. 224] ; *San Diego Land & Town Co.* v. *Neale,* 88 Cal. 50 [25 P. 977, 11 L.R.A. 604] ; *San Mateo* v. *Christen,* 22 Cal.App.2d 375 [71 P.2d 88].)

Furthermore, no prejudice has been shown nor do we see how it could be shown when we consider the plaintiff's conduct and the testimony which was received at the plaintiff's instance prior to the alleged error.

Considering next the matter of the contention that evidence of sales of smaller parcels was error. Sales prices of some 11 parcels which ranged in size from 1 percent to 6½ percent of the size of parcel condemned was received in evidence. There was no sale of a parcel of the size of the property to be condemned. All of the sales of the smaller parcels were of comparative recent dates. The judge at the time when the question came up for discussion in the trial said in

effect that size alone was not the determining factor. The smaller sales could have shown the adaptability of the defendant's property for subdivision, a trend of market value, a trend of the development in the area and various other things which would be of advantage to a prospective buyer. ▮ In the Faus case, *supra* (48 Cal.2d 672) at page 678 the court stated, in quoting from McCormick on Evidence:

"These safeguards are the following: The sales of the other tracts must have been sufficiently near in time, and the other land must be located sufficiently near the land to be valued, and must be sufficiently alike in respect to character, situation, usability, and improvements, to make it clear that the two tracts are comparable in value and that the price realized for the other land may fairly be considered as shedding light on the value of the land in question. *Manifestly, the trial judge in applying so vague a standard must be granted a wide discretion.*" (Emphasis added.) (See also *County of Los Angeles* v. *Hoe,* 138 Cal.App.2d 74, 80 [291 P.2d 98] ; *Bartlett* v. *City of Medford,* 252 Mass. 311 [147 N.E. 739].)

▮ We should not assume that the trial court abused its discretion. In fact the rule is exactly the opposite. (See *Heintz* v. *Cooper,* 104 Cal. 668 [35 P. 511] ; *Pelegrinelli* v. *McCloud River Lbr. Co.,* 1 Cal.App. 593 [82 P. 695] ; *Frizzell* v. *Frizzell,* 158 Cal.App.2d 652 [323 P.2d 188] ; *Brown* v. *Newby,* 39 Cal.App.2d 615 [103 P.2d 1018] ; *Bertie Estate,* 132 Cal.App.2d 522 [282 P.2d 529] ; *Los Angeles City High School District* v. *Kita,* 169 Cal.App.2d 655, 664 [338 P.2d 60].)

▮ There can be no absolute formula or definition of what constitutes similar or like property. Certainly, similar does not mean identical. It appears to us that the determination must vary with each particular case. The Faus case, *supra,* mentioned the items of time, location, character, situation, usability and improvement. Nothing is said about size. (See *City of Chicago* v. *Harbecke,* 409 Ill. 425 [100 N.E.2d 616] ; *City of Chicago* v. *Vaccarro,* 408 Ill. 587 [97 N.E.2d 766] ; 118 A.L.R. 869; *Wassenich* v. *City & County of Denver,* 67 Colo. 456 [186 P. 533, 536] ; *Sawyer* v. *City of Boston,* 144 Mass. 470 [11 N.E. 711] ; *Williams* v. *New York P. & N.R. Co.,* 153 Md. 102 [137 A. 506].)

▮ Considering now the contention that the cross-examination of plaintiff's witness as to listings of 17 smaller competing properties was improper. The judge instructed the jury that the questions were permitted for the purpose of

testing the investigation made by the expert witness. As we view it there should be a wide latitude in the cross-examination of expert witnesses to the end that there may be some test applied to the reasons and the validity of their opinions. Obviously, an expert who has made no investigation can have but little weight applied to his opinion. Under the circumstances which existed in this case we have concluded that there was no prejudicial error in asking the questions which were asked on cross-examination. (See *City of Los Angeles* v. *Deacon,* 119 Cal.App. 491 [7 P.2d 378] ; *Palladine* v. *Imperial Valley Farm Lands Assn.,* 65 Cal.App. 727 [225 P. 291] ; *People* v. *Pacific Gas & Electric Co., supra,* 27 Cal. App.2d 725.)

Plaintiff also asserts that the cross-examination was erroneous for the reason that the various listings were improper because of the size of the parcels involved. As heretofore pointed out size alone is not the determining factor. Furthermore, in this case the plaintiff itself opened up the subject by having the very witness who was cross-examined produce numerous pictures of the properties with ''For Sale'' and ''For Lease'' signs thereon. It was proper to show by cross-examination to what extent the witness had investigated the properties and also to correct any misleading inference which might be left by the signs. The trial judge was in a far better position than we are in to determine whether, under the circumstances, the testimony was proper. He determined that it was proper and we think that he did not abuse his discretion.

The next contention of plaintiff is that it was error to permit on cross-examination of plaintiff's expert witnesses, testimony to the effect that $60,000 had been offered for a one-half acre corner lot. Each of the plaintiff's expert witnesses considered the highest and best use of the portion of the property to be condemned at the corner of Azusa Avenue and Cypress Street to be for a service station site of about 150 feet by 150 feet. Each of the plaintiff's witnesses valued that portion of the property at a higher rate, one witness at $22,500 per acre and one witness at $30,000 per acre. One of the plaintiff's witnesses said that he had talked to the owner of that property at Azusa and Workman and he was then asked if he had found that the owner of that property had been offered $60,000 for a 150 by 150 portion thereof and he answered ''Yes.''

The plaintiff's own witnesses testified differently as to the value of the corner of the property to be condemned. It was, we think, proper to examine the witness about the other properties of the same size, shape and utility. The trial judge repeatedly told the jury that the testimony in this regard was for the limited purpose of testing the witness and was not evidence of market value. (See *People* v. *Union Machine Co.*, 133 Cal.App.2d 167 [284 P.2d 72].)

Had the plaintiff been of the opinion that the asking of the question on cross-examination constituted error it might have been well for it to have made a motion for a new trial which it did not do. We think that there was no abuse of discretion.

The plaintiff's next assertion is that it was error in the cross-examination of plaintiff's expert witness to ask, by leading questions, about the amount paid by the state to the defendants for another parcel of property. The question concerned the details of a sale of a portion of the property of the defendants to the state some seven months before the date of value set in this case. The property sold was originally a part of the property condemned in the case at hand. One of the plaintiff's experts talked with a man from the State Appraiser's Office (Division of Highways). The defendant, Jobe, and one of her expert witnesses had testified in detail about the sale to the state and that it was an open market sale. The plaintiff's expert witness did not mention the sale. On cross-examination he was asked if he knew of the sale and if it would have influenced his opinion if he had inspected the state's appraisal and found certain stated amounts and allowances. The defendant's expert had previously given the allocation of the amounts between land and improvements. There were other questions put to the plaintiff's expert witness of similar purport and having to do with other appraisals and breakdowns of defendant's property theretofore sold to the state. Again, we think there was no error in such questions under the circumstances of this case. (See *People* v. *Union Machine Co.*, *supra*, 133 Cal.App.2d 167, 171.)

Plaintiff's last contention is that it was error to permit cross-examination as to certain options to lease. The plaintiff's expert witness was asked on cross-examination about two alleged options to lease property of the defendant's other than that which was condemned.

One of the defendant's experts testified without objection

with reference to certain options to lease portions of defendant's property at the northeast corner of Cypress and Azusa giving the terms of the options and the areas. It would appear therefore that when plaintiff's expert witness was asked the questions on cross-examination there was at that time evidence in the record of the options in question. The court told the jury that the questions to plaintiff's expert witness were only to test the extent of his investigation and were not proof of any fact of anything therein stated. The second of plaintiff's experts was cross-examined along similar lines and no objection was made thereto by the plaintiff.

The matter rested in the discretion of the trial court. (See *County of Los Angeles* v. *Hoe, supra,* 138 Cal.App.2d 74.)

We believe as stated in *Faus, supra* (48 Cal.2d 672), that some of the rules of evidence in condemnation cases have been "contrary to logic [and] unrealistic." The only purpose of the proceedings in the first instance is to ascertain and determine the fair market value of the property to be taken. ▇▇ That price is "the highest price estimated in terms of money which the land would bring if exposed for sale in the open market, with a reasonable time allowed in which to find a purchaser, buying with knowledge of all of the uses and purposes to which it was adapted and for which it was capable."

We are convinced that the trial court safeguarded the interests of the plaintiff. The evidence about which the plaintiff complains afforded some assistance to the jury in determining its verdict and none of the evidence was prejudicially erroneous. (See 9 Hastings L. J. 101; 5 U.C.L.A. L. Rev. 151; 31 So. Cal. L. Rev. 204 for some enlightening comments on the problem. See also Witkin, California Evidence, §§ 152, 153, 154.)

The judgment is affirmed.

Lillie, J., and Shea, J. pro tem.,* concurred.

A petition for a rehearing was denied November 6, 1959, and appellant's petition for a hearing by the Supreme Court was denied December 2, 1959. Gibson, C. J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.