[Civ. No. 6356. Fourth Dist. Jan. 19, 1961.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Respondent, v. UNIVERSITY HILL FOUNDATION (a Corporation) et al., Appellants.

Spray, Gould & Bowers, Joseph A. Spray and Hodge L. Dolle for Appellants.

George C. Hadley, Richard L. Frank and Charles E. Spencer, Jr., for Respondent.

GRIFFIN, P. J.—Plaintiff-respondent, by and through the Department of Public Works, brought this action in eminent domain on June 4, 1957, against the owners, defendants-appellants, condemning the fee of a part of a 4¾-acre parcel of certain described real property located in Anaheim, Orange County, sought for construction of a state highway for freeway purposes and an easement for drainage purposes. An order for possession was made on June 17, 1958. After trial, and on November 12, 1958, after viewing the premises, the jury returned a verdict of $25,500 for Parcel 1A, $1,750 for Parcel 1B, $3,500 for Parcel 1C and severance damages of $2,500.

The property had a frontage of approximately 638 feet on Commercial Street, between Lemon and Patt Streets, and a depth of approximately 322 feet. Parcels 1B and 1C involved the drainage easement. The property was improved with a Ready-Mix Concrete Plant and accessory improvements thereto. The parcels taken were the rear of the main holdings in an area which had been used for the deposit of residue or tailings from the Ready-Mix Concrete trucks, storage of raw materials, forms, removal of sand and for the parking of a crane and trucks, etc. No buildings or structures were on these portions of the property and they comprised about 2.26 acres, or approximately 48 per cent of the entire land area.

The appeal is from the entire judgment, but, according to the appellants' opening brief, it is limited to the portions of the judgment awarding damages for the taking of Parcel 1A and awarding severance damages.

The principal question here involved relates to the introduction of evidence of the price of an alleged sale of adjoining property (herein referred to as the Wise property) to the

state for freeway purposes and testimony as to certain alleged special benefits.

The defendants produced several witnesses, some of whom qualified themselves as expert appraisers. They testified generally as to the investigation and examinations they made as to land values and other claimed comparable sales in that neighborhood and as to the value and character of defendants' property in general. Basing his opinion on all of these facts, one David Culver, an appraiser called as a witness by defendants, was of the opinion that Parcel 1A, which was slightly over two acres, had a fair market value of $37,817; Parcel 1B, $1,381; and Parcel 1C, $2,740; that the value of the remainder before taking was $101,062 and after taking, $82,500, and accordingly the severance damage was $19,562; that the value of all the property before taking was $145,000; land value $87,500 or $18,538 per acre, and that the improvements were valued at $57,500.

Another appraiser called by defendants (Sayer) testified that there were no sales of comparable value in reference to premixed concrete plants, but upon his investigation he estimated the value of the entire property before taking at $150,000; Parcel 1A at $41,072; Parcel 1B at $1,499; Parcel 1C at $2,974; and severance damages of $17,209.

The president of defendant corporation gave a figure of $200,000 for the entirety prior to the taking and a value of $45,000 as to Parcel 1A, $1,600 as to parcel 1B, and $3,200 as to Parcel 1C, and said the value of the remainder after taking was $150,000 and the severance damage was $50,000.

As opposed to this, plaintiff produced two expert appraisers (Jones and Thomason). Jones testified generally of his investigation and compared several other sales in the community. Some question may be raised as to whether or not they were directly comparable properties and in use as Ready-Mix Concrete Plants, but he stated in his opinion, which he ultimately expressed, they were comparable, and that he used the market data approach as to what properties might be available and to see what the trend of values was generally and they were of assistance in reaching this opinion.

Some question arose as to evidence, received over objections, regarding one sale made to the state from one Wise of nearby property purchased for freeway purposes. We will discuss this question later. His ultimate opinion was that the value of the whole property before taking was $107,000; Parcel 1A,

$23,117 or $11,300 per acre; Parcel 1B, $925 or $12,100 per acre; and Parcel 1C, $1,908 or $12,850 per acre; that the value of the remainder before taking was $81,250; that the value of the remainder after taking was $81,050 and that therefore there was no severance damage indicated.

He proceeded to testify generally as to possible special benefits and then, after some further examination, concluded they had no "measurement in dollar amount." This testimony in reference to special benefits was the subject of bitter attack by counsel for defendants who claimed the witness purposely testified as to claimed special benefits in order to offset the amount of severance damages and that it was highly improper and prejudicial to defendants to have the jury hear this evidence when, in fact, the alleged special benefits had no pecuniary value. (Citing *People* ex rel. *Dept. of Public Works* v. *Schultz Co.,* 123 Cal.App.2d 925 [268 P.2d 117] ; *People* v. *Thompson,* 43 Cal.2d 13 [271 P.2d 507].)

Contained in Jones' testimony were statements to the effect that defendants' remaining property would derive special benefits from the proposed freeway, such as increased accessibility, site prominence and permanent fencing to be supplied by the state; that he had evaluated the special benefits at about $300, but had deleted this amount as inconsequential.

 A motion to strike this portion of the testimony was made by defendants and was granted by the court, and the jury was fully instructed to disregard it. We will assume the jury followed the instructions of the court. (*County of Mendocino* v. *Padula,* 182 Cal.App.2d 470 [6 Cal.Rptr. 270].)

Subsequently, respondent's other appraiser (Thomason) likewise testified as to several other sales in the community and fixed a valuation of the whole property prior to the taking at $105,135 and the value of the land at $57,635, equalling $12,250 per acre. He appraised Parcel 1A at $24,912.40 and stated there was no severance damage.

Likewise, in connection therewith, he testified to certain claimed special benefits and stated he had not placed a monetary value on them. A motion to strike this testimony was granted and the jury was instructed to disregard that part of the testimony. The trial judge immediately warned counsel for plaintiffs of his former ruling in this respect and, after considerable discussion on the subject, counsel for plaintiff, apparently feeling that the trial judge would grant defendants' motion for a new trial if the case continued and the

plaintiff prevailed in his contentions as to valuation, himself moved for a mistrial. Counsel for defendants objected to the granting of a mistrial on the ground that the motion had no merit. The motion was denied. The jury thereafter was further instructed to disregard this testimony as to any alleged special benefits and it was then instructed that there was no proof of any such benefits and the court withdrew from the jury's consideration any form of verdict bearing on special benefits. We will assume the jury followed the instructions of the court. (*Pacific Gas & Elec. Co.* v. *Spencer,* 181 Cal. App.2d 171 [5 Cal.Rptr. 75].) In addition, counsel for plaintiffs, in his argument to the jury, emphasized the fact that under the evidence no special benefits could be allowed. After the judgment was rendered the trial court denied a motion for a new trial in this respect.

As to the testimony in reference to the Wise sale, defendants' experts did not rely chiefly on comparable sales to determine fair market value. One of defendants' experts was questioned on cross-examination concerning the purchase by the state of the Wise property, but defendants' objections to these questions were sustained and the jury was admonished to disregard the question. Later, one of plaintiff's experts utilized this sale as a comparable sale (although it was improved property) and testified, over objection, that the sale price was $12,000 an acre for the land. On cross-examination, it was brought out that the total purchase price was $150,000, with no breakdown in the contract as to the amount paid for the land and the improvements; that the Wise brothers, operators of the business located on the property and sons of the owners, were satisfied with the price paid for the land, but not with the price paid for the improvements. Defendants, in rebuttal, produced the attorney who represented Wise in the sale to the state. He testified that during negotiations there was no discussion of anything other than a lump sum. In rebuttal, defendants produced Ed Wise, son of the owner, who testified that he did not tell the state's appraiser that the sale price ($150,000) included $12,000 per acre for the land. However, on cross-examination, he testified that he thought $12,000 per acre was a fair price for the land and that one of the appraisers employed by Wise had said that the land was worth about $10,000 an acre. Defendants contend that prejudicial error was committed in admitting into evidence testimony about the Wise purchase without a clear showing of volun-

tariness and comparability and that proper objections were interposed and that, even if admissible, the trial court should have given a precautionary instruction pointing out the forced or compulsory nature of this sale. Defendants further contend there was no segregation of price between the real estate and the building thereon. (Citing such authorities as *County of Los Angeles* v. *Faus,* 48 Cal.2d 672 [312 P.2d 680]; *People* v. *Murata,* 161 Cal.App.2d 369 [326 P.2d 947].)

Whether or not the price received for the Wise property was a result of forced sale is not clearly indicated. ▮ In *County of San Mateo* v. *Bartole,* 184 Cal.App.2d 422, 425 [7 Cal.Rptr. 569], it was held (in syllabus 16):

"While evidence of price paid by a public corporation with power of eminent domain is usually not a proper basis for determination of market value, such evidence is not always inadmissible, especially where the sale preceded the filing of an action in eminent domain against the same or adjacent property. The price paid by plaintiff for adjoining property would be admissible if the price paid was sufficiently voluntary to be a reasonable indication of value." See also *Covina Union High School Dist.* v. *Jobe,* 174 Cal.App.2d 340 [345 P.2d 78].

▮ The fact that the freeway was to pass over some of the Wise property was known. It appears that the offer made by the state was accepted and the only complaint was as to the total allowance. The state's appraiser indicated a breakdown between the price of the real estate and the improvements thereon and stated the land was valued at $12,000 per acre by the state and said this price was discussed with some of the Wise family who expressed satisfaction with that price for the real estate but not as to the property in its entirety. The court properly held there was sufficient foundation laid for the admission of this line of testimony. The weight to be given it was a factual question for the jury to determine. (*Covina Union High School Dist.* v. *Jobe, supra.*)

The record brought to this court does not contain a copy of the instructions given. It does not appear that defendants offered any precautionary instructions on the subject which they claim should have been given. They cannot now complain if, in fact, none were given. ▮ As stated in *Covina Union High School Dist.* v. *Jobe, supra,* 174 Cal.App.2d 340 (in syllabus 6): "An appellant cannot complain on appeal that a certain instruction was not given where he made no request therefor at the trial."

This sale was but one of many other sales considered by the experts in reaching their ultimate opinion. From a reading of the entire record, we are convinced that no prejudicial error resulted and that the amount of the jury's verdict was otherwise supported by the testimony properly received.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.