[Civ. No. 23708. Second Dist., Div. Three. Jan. 5, 1960.]

JEROME PETER MATTINA, JR., a Minor, etc., Appellant, v. JOHN WHITMORE CONANT, Respondent.

Kates & Kates and Jerome D. Savenick for Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Respondent.

SHINN, P. J.—We have before us an appeal by Jerome P. Mattina, Jr., suing by his guardian *ad litem* from an order granting a new trial to the defendant Conant in an action

in which plaintiff was awarded by verdict and judgment the sum of $6,000 for personal injuries.

The motion was made upon the grounds of excessive damages, insufficiency of the evidence, and errors of law. The order did not state the ground upon which the motion was granted. From the reported argument on the motion and from the briefs it appears that the basis of the order was supposed error in overruling defendant's objections to certain questions propounded to plaintiff in his direct examination. We are of the opinion that no error was committed.

Liability of defendant for plaintiff's injuries was clearly established. At about 11 p. m., August 7, 1955, a car which plaintiff was using was parked at the curb in Granada Hills. Plaintiff emerged from a residence where he had been visiting and entered the street behind his car, intending to enter it from the driver's side. Glancing toward the left he saw defendant's small truck turn a corner about 150 feet to the south and proceed in his direction with the lights flickering. He watched the truck but did not move from his position until he saw the lights go out and realized that the truck was moving directly toward him. He testified that he leaped forward into the street, stepping first with his left foot, and that the truck struck the inside of his right knee. He went down on his hands and knees. The truck struck his car and propelled it forward 80 or 90 feet. Plaintiff went into his friend's house and lay down. He experienced pain in his right knee and in about a half hour it had begun to swell and to show discoloration. When there was no improvement in the knee after four days plaintiff visited Dr. Axelrod and received shots to relieve the swelling. Thereafter, for four or five weeks on each day or every other day he was given therapy treatments. He was referred by Dr. Axelrod to Dr. MacInnis, a specialist in orthopedic surgery. He was examined by Dr. MacInnis, who advised surgery, and in October Dr. MacInnis operated and removed the medial or inside cartilage. Thereafter until the time of trial the knee would lock; when plaintiff had been sitting for a considerable time he would find that he was unable to straighten his leg without assistance. This had occurred many times prior to the trial. There is permanent impairment of the knee.

At the time of the accident in question plaintiff was 18 years of age. He had previously been active in high school athletics. In October, 1954, his right knee was injured in a football game. He consulted a doctor of a high school team

and the doctor of his own school. His knee was put in a cast which he wore for two weeks. Thereafter he had therapy treatments for about one month. He had no surgery upon the knee. For about two months after the injury he experienced some difficulty with the knee. Then it cleared up. In February, 1955, in gymnasium activities, he reinjured his knee in alighting from the rings. He received no treatment for this injury. Thereafter there was an occasional clicking in the knee, but no locking.

With respect to his treatment under the team doctor and the school doctor plaintiff was questioned as set out in the margin.[1]

Defendant contends that the effect of this testimony was to inform the jury of the fact that the doctors were of the opinion that surgery was not required and that he was thereby deprived of an opportunity to cross-examine them as to their reasons for their opinions. Upon the other hand, plaintiff maintains that since he had no surgery the purpose of the questioning was merely to develop the fact that he accepted the treatment that was recommended and followed such instructions as were given him by the doctors.

It requires resort to tenuous reasoning to discover in the

---

[1] "Q. Did any of those doctors suggest that you go to a specialist at that time? A. No.

"Mr. KELLY: I'll object to that as calling for hearsay, unless they intend to call those doctors, then I will withdraw the objection.

"THE COURT: Well, it isn't hearsay if they told him he ought to go to a specialist.

"Mr. KELLY: The statement of the doctor ——

"THE COURT: If the doctor told him that, he is not saying he ought to—if a doctor told him. Overruled. Did anybody tell you to go to a specialist?

"THE WITNESS: No, no one.

"Q. BY MR. HIMMEL: Was any surgery performed on your knee following that football accident in October, 1954?

"THE WITNESS: No.

"Q. Was any surgery discussed or contemplated? I mean, was there some contemplation that you should have surgery?

"Mr. KELLY: Object to that as calling for hearsay.

"THE COURT: Calls for a conclusion too.

"Q. BY MR. HIMMEL: Well, recommended I think is the word. I mean was he advised to have surgery.

"Mr. KELLY: Object to that as calling for hearsay.

"THE COURT: From whom?

"Mr. HIMMEL: These doctors that treated him right after the accident.

"Mr. KELLY: Objected to as calling for hearsay, what the doctors might have told him or didn't tell him.

"THE COURT: Overruled.

"THE WITNESS: No, no one recommended me for operation at that time."

evidence that was admitted a violation of the hearsay rule. Defendant's argument assumes that since the doctors did not advise surgery they must have been of the opinion that surgery was not indicated, although they did not express that opinion. That is a reasonable assumption. Whenever a physician prescribes certain treatment for a patient an implication arises that he entertained an opinion that it would be the proper treatment and that no other was indicated at the time. When the school doctor and the team doctor put a cast on plaintiff's knee, and later gave it therapy treatments, they made it plain that it was their opinion that surgery was not required, even though they did not express that opinion. If they had believed otherwise they would have said so. All this appeared from plaintiff's testimony in which he described the treatment he had received. This evidence could not have been excluded under any reasonable interpretation of the hearsay rule. The statement that surgery was not recommended by either of the doctors was unnecessary. It added nothing to what was already in evidence with respect to what the doctors recommended. Independently of that statement it clearly appeared that plaintiff had accepted the treatment that had been prescribed, followed the instructions that had been given him, and that no other treatment had been recommended.

There was extensive evidence with respect to plaintiff's former injury, consisting of his own testimony and that of Doctors Axelrod and MacInnis. When Dr. MacInnis operated it was found that the medial meniscus (cartilage) of the right knee was torn and seriously injured. Also it was discovered that the lateral meniscus had been injured; it contained scar tissue and was degenerated in a manner which indicated that degeneration had taken place over a considerable period of time, at least six months. Although Dr. MacInnis did not undertake to express an opinion as to when the tears in the medial meniscus had occurred, both he and Dr. Axelrod expressed the opinion that the condition which necessitated surgery was the result of plaintiff's automobile accident and not the football injury. The examination and cross-examination of the doctors was exhaustive. Every fact was brought out that had a bearing upon the question of the former injury and the later one as well. The jurors had the most complete information as to the extent of the old injury and the fullest opportunity to determine the extent to which plaintiff's present condition was due to the old injury and to the later one. The verdict of $6,000 reflects their judgment as to that portion

of the total detriment suffered by plaintiff that was due to the automobile injury. That was the sole question in the case. The testimony respecting the treatment that plaintiff received following the first injury, including that with respect to the possible necessity for surgery, was relevant only to the question of the seriousness of that injury as compared with the later injury. It all had to do with the amount of damages that should be awarded for the later injury.

We think the trial judge was too critical of his ruling in overruling defendant's objections, and that he detected error when none existed. His fear that the merely cumulative testimony that surgery was not recommended after the first accident might have influenced the jury in assessing damages was, in our opinion, wholly unfounded. It was clear from the other evidence not only that surgery was not recommended but also that it was not required. It was not contended at the trial, and is not now urged that plaintiff's knee should have been operated on at the time of that accident. Plaintiff was examined by defendant's physician. He could have been called if defendant had undertaken to prove that the first injury alone was serious enough to require surgery, but he was not called.

We recognize the rule that when error has been committed the trial court has a broad discretion in determining whether the error was prejudicial. (*Los Angeles City High School Dist.* v. *Kita*, 169 Cal.App.2d 655 [338 P.2d 60].) But if the order was granted upon the ground of error and there was no error it must be reversed. (*Greenman* v. *Rogers*, 122 Cal.App.2d 55 [264 P.2d 92].)

It is conceded, as it must be from the generality of the order, that the court did not deem the award of damages to be excessive or that the evidence was insufficient to justify the verdict. The only reason for granting a new trial would have been the court's belief that if the objections of defendant had been sustained the jury might have returned a smaller verdict. We cannot believe that the verdict might have been different.

The case was well prepared and well tried. Plaintiff's medical and hospital expenses amounted to about $800; he lost a considerable time from the work in which he was engaged after the accident. The verdict was not for an excessive amount. It was justified by the evidence.

The conscientious review of the trial for error upon the motion for a new trial evidences the court's appreciation of its duties in ruling upon such a motion. The trial judge believed he had committed error and was not reluctant to

admit it. But as we have said, we believe he was overly critical of his rulings. He did not commit error. The judgment should not have been vacated.

The order granting a new trial is reversed.

Vallée, J., concurred.

Ford, J., concurred in the judgment.

A petition for a rehearing was denied January 25, 1960, and respondent's petition for a hearing by the Supreme Court was denied March 1, 1960. Schauer, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.