[Civ. No. 30. Fifth Dist. Apr. 9, 1962.]

ERNEST WESTCOTT, Plaintiff and Respondent, v. LESLIE R. HAMILTON, Individually and as Executor, etc., et al., Defendants and Appellants.

Stutsman, Nagel & Ferrari and J. J. Nagel for Defendants and Appellants.

Philander Brooks Beadle, John T. Tully and Barreiro & Dilling for Plaintiff and Respondent.

BROWN, J.—This is an appeal from a judgment entered pursuant to a jury verdict in favor of plaintiff for $16,500 for damages sustained as the result of an automobile accident involving plaintiff and Ethel Jane Hamilton (now deceased), the executor of whose estate is the appellant herein, which accident occurred on January 9, 1959. Motion for a new trial was denied.

The judgment on the verdict, as entered, is erroneous. It sets forth the verdict but fails to recite, as to defendant L. R. Hamilton, Inc., a limitation to the sum of $5,000, that being the maximum for which the owner of the Hamilton car was liable (Veh. Code, § 17151, formerly § 402, subd. (b)). The trial judge should order that the clerical error be forthwith corrected. (*Fallon* v. *Brittan,* 84 Cal. 511, 514 [24 P. 381]; *George* v. *Bekins Van & Storage Co.,* 83 Cal.App.2d 478, 480 [189 P.2d 301]; *Savings & Loan Society* v. *Horton,* 63 Cal. 310; 29 Cal.Jur.2d, Judgments, § 100, p. 14.)

This accident occurred at an intersection of North Frontage Road, County Road 102 and State Highway 198, at a point approximately 2 miles west of Visalia. North Frontage Road and Highway 198 parallel each other in an east-west direction, separated by a parkway on which is located a chain link fence. Eastbound and westbound traffic on Highway 198 is likewise separated by a parkway. Both parkways are open at the point of intersection with County Road 102, which runs north and south, roughly forming a T-shaped intersection with Highway 198 and North Frontage Road.

Thus, automobiles, in going south on County Road 102, may enter the intersection with the Frontage Road, continue across said Frontage Road, pass the stop sign, and proceed directly into the balance of the common intersection with the divided highway and if desiring to go east, will go across the crossover and turn east. If the driver of the automobile desires to go west on divided Highway 198, he crosses the Frontage Road intersection, stops at the stop sign, and makes a direct right-hand turn to the west.

In the present case, on a bright, sunshiny day, at approximately 4 o'clock p. m., defendant's driver, Mrs. Hamilton,

drove an Oldsmobile car, owned by defendant L. R. Hamilton, Inc., in a westerly direction over Highway 198 and, as she approached the intersection, entered a long, 13-foot wide right turn lane, and proceeded into the intersection. Upon arriving in the intersection she then commenced a gradual turn to the right, in a general north-westerly direction, into that portion of the intersection formed by North Frontage Road and County Road 102. The evidence was in conflict as to her rate of speed when she entered the intersection. There was testimony that she was traveling at 5 miles per hour, in which event she would travel $7\frac{1}{3}$ feet per second, or 10 miles per hour, in which event she would travel $14\frac{2}{3}$ feet per second. There was other testimony that she was going 15 to 20 miles per hour as she entered the intersection. Mrs. Hamilton died prior to trial, but not as a result of this accident. Her testimony was therefore not available to defendants. However, the investigating Highway Patrolman testified that, immediately after the accident, she told him she did not see plaintiff's truck and trailer until the impact, and did not hear him sound his horn because the car radio was playing and the windows were closed.

Immediately prior to the collision, plaintiff was driving a Ford pickup, to which was attached a two-wheel trailer transporting a cow, in a westerly direction in the westbound lane on the north side of North Frontage Road, at a speed of approximately 30 miles per hour, less than the authorized speed limit, traveling approximately 44 feet per second.

At the time when defendant left the right-hand turn lane, there were several choices of travel she could make. She could continue while in the right-hand turn lane directly west and return back to the main portion of the highway; or make a right turn into the Frontage Road intersection with Road 102 where she could make another immediate right turn onto Frontage Road and head back from whence she came in an easterly direction or she could proceed across the intersection into Road 102 or, lastly, she could make a left turn into the north side of Frontage Road and go in the same westerly direction as the plaintiff was traveling on North Frontage Road.

Plaintiff, on the other hand, in going west on North Frontage Road, could continue across North Frontage Road at its intersection with Road 102; or could turn north on Road 102 at this intersection; or could turn south on the same intersection and proceed towards the balance of the common inter-

section on Highway 198, preparatory to either turning west upon it or proceeding across the crossover and turning east.

In fact, both vehicles proceeded into the portion of the intersection formed by North Frontage Road and County Road 102 and the collision occurred. Neither party was faced with a stop sign.

With County Road 102 joining Frontage Road and on into the divided Highway 198, there becomes but one common intersection. Section 365 of the Vehicle Code (formerly § 86) defines an intersection as follows: "An 'intersection' is the area embraced within the prolongation of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways, of two highways which join one another at approximately right angles or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict."

 A street joining or crossing a double street where portions are separated by rights of way or parkways, is but one intersection (*Blanton v. Curry*, 20 Cal.2d 793, 801-802 [129 P.2d 1]). Intersections with a double street constitute but one intersection (*Cruzen v. Wilcox*, 20 Cal.App.2d 728, 730 [67 P.2d 709]). Had County Road 102 not entered into Frontage Road, then there would have been one highway divided into separate lanes with crossovers and no intersection (*Navajo Freight Lines, Inc. v. Shafer*, 179 Cal.App.2d 188, 193 [3 Cal.Rptr. 523]). *Sherr v. East*, 45 Del. 240 [71 A.2d 262, 263], also holds that there would be no intersection, but that if there was another highway extending into these highways, such as County Road 102, there would be an entirely different situation.

Thus, plaintiff and defendant were entering an intersection common to the divided Highway 198, the Frontage Road, and County Road 102.

### Negligence of Defendant

 Defendants raise the question that in their view the defendant was in the intersection first at the time when the plaintiff was some distance away from the point of impact.

At no time did the defendant ever see the plaintiff, though she had a clear opportunity to avoid the collision and had the duty to observe inasmuch as there were no obstructions or other traffic in the way. She continued on her path, unaware of anything else on the highway, listening to her radio, with her car windows up.

. While in *Page v. Mazzei*, 213 Cal. 644, 645 [3 P.2d 11], the

court stated that a driver of a car first in the intersection has the right to assume that he will be given the right of way without danger of collision and accordingly assume that the driver of the other car will obey the law, we feel that this does not give the defendant the right to assume that there are no other cars coming in the intersection and to behave accordingly.

In *Orbach* v. *Zern*, 138 Cal.App.2d 178, 181 [291 P.2d 120], the court said: "It was the duty of the defendant to keep a lookout for persons and vehicles ahead of him; he could not assume that the way was clear."

■ And in *Huetter* v. *Andrews*, 91 Cal.App.2d 142, 146 [204 P.2d 655], the court said: "In the circumstances revealed by the record one who does not see that which is clearly visible and would have been seen by one exercising ordinary care, as result of which a collision occurs, is guilty of negligence as a matter of law."

■ The court, in the *Huetter* case, goes on to say that a person "must in order to avoid a charge of negligence, keep a proper lookout for [persons or vehicles] and keep his machine under such control as will enable him to avoid a collision with another automobile . . . and, 'All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. . . .' (*Berlin* v. *Violett*, 129 Cal.App. 337, 340 [18 P.2d 737].)"

This is a new type of intersection accident, in that both vehicles are approaching the common intersection in the same direction and when the defendant makes a turn in the intersection to go from one portion of it to another portion, she comes under section 22107 (former Veh. Code, § 544, subd. (a)) which provides: "No person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety. . . ."

■ Thus, we feel that with the present type of complicated crossovers and intersections, not only with dual highways, but intersecting highways, any person going from one portion of a dual highway to another portion of a dual highway is negligent as a matter of fact if he fails to observe and yield to traffic approaching a common intersection.

■ Even if it be conceded that defendant entered the intersection first and thus, legally had the right of way, she was still bound by ordinary and well established negligence

rules, to proceed across the intersection in a reasonably careful and prudent manner. From the evidence briefly summarized above, the jury could well conclude that defendant was negligent as a matter of fact in blindly proceeding across the intersection in view of plaintiff's oncoming vehicle. Certainly this court cannot now say, as we are asked to say, that defendant was free from negligence as a matter of law.

### Was Plaintiff Guilty of Contributory Negligence as a Matter of Law?

The defendants claim that the plaintiff was guilty of contributory negligence as a matter of law since he saw the defendant entering the intersection in his path of travel at a time when he was some feet away and had ample opportunity to yield the right of way to the defendant.

Defendants rely on the case of *Osgood* v. *City of San Diego*, 17 Cal.App.2d 345 [62 P.2d 195], where the court said at page 351, that the defendant had the right of way which plaintiff should have respected, and "as he was obeying the law, had the right to assume that plaintiff would also obey the law and 'would yield him the right of way, and would not attempt to cross said intersection in front of him.' (*Driscoll* v. *Shipp*, 13 Cal.App.2d 591 [57 P.2d 177].) . . . Had plaintiff kept his car under proper control he could have passed to the rear of [defendant's] car in safety and without exposing himself or anyone else to the danger of injury." And further said at page 352, that there is no more firmly founded nor closely followed rule than that the question of contributory negligence and the negligence of the defendant "are questions of fact addressed to the jury and that the implied findings of that body on those questions should not be disturbed on appeal." And, "In order to bring the rule into play there must be a conflict in the evidence. Where, as here, the evidence is not conflicting on these two questions, and reasonable minds uninfluenced by a natural sympathy for plaintiff can only reach the conclusion that the plaintiff was guilty of contributory negligence, and [defendant] was not guilty of any negligence, there is no place for the application of the rule and the questions are of law for the court and not of fact for the jury."

In *Page* v. *Mazzei*, *supra*, 213 Cal. 644, 645-646, the court said: "The case, in all material respects, is so similar to the case of *Couchman* v. *Snelling*, 111 Cal.App. 192 [295 P. 845, 847], recently decided, that we approve and adopt the lan-

guage of [that court], viz: 'Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has a right to assume that the driver of the other car will obey the law, slow down, and yield the right of way, if slowing down be necessary to prevent a collision. [Citation.] Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. [Citation.] Whether or not, therefore, plaintiff after observing the approach of defendant's car, its position, and the rate of speed it was traveling and keeping the same within his side vision, was justified in proceeding upon his rightful way across the intersection in advance of defendant presents a question upon which reasonable minds might differ and was therefore one for the jury to determine.' ''

It is the general rule that the defendant has the burden of proving the contributory negligence on the part of the plaintiff, and the question of contributory negligence ''must be determined without regard to any negligence on the part of defendant.'' (*Moss* v. *H. R. Boynton Co.*, 44 Cal.App. 474, 476 [186 P. 631].)

In the present case the defendant claims that she was in the intersection first and the plaintiff claims that he was in the intersection first, and the evidence on this point is conflicting. Some witnesses testified that the defendant was only going 5 to 10 miles per hour when she entered the intersection, and another witness testified that she was going 15 to 20 miles per hour at that time. One witness testified that the defendant drove into the side of plaintiff's car in the intersection, while another testified that defendant's car was slightly ahead of plaintiff's truck and that defendant's car struck the left front bumper and left front fender of the truck. It was difficult to determine where the actual impact occurred because the cars turned over and went off into the northwest corner of the intersection.

In *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237, 240, 241 [116 P. 513], the court said: '' [Contributory negligence] is a question of law only when the evidence is of such a character that it will support no other legitimate inference than that in the one case the plaintiff was guilty of contributory negligence, . . . When the evidence is such that the court

is impelled to say that it is not in conflict on the facts, and that from those facts reasonable men can draw but one inference, and that an inference pointing unerringly to the negligence of the plaintiff contributing to his own injury, then, and only then, does the law step in and forbid plaintiff a recovery. . . . 'Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence, the question is one of fact for the jury.' (*Johnson* v. *Southern Pacific R.R. Co.*, 154 Cal. 285 [97 P. 520].)''

The plaintiff claims that he was exercising ordinary care in the operation of his truck as he went along and had a right to presume that the defendant would operate her car with reasonable caution and see him and not drive blindly into his path, inasmuch as she was making a turn within the intersection to which both cars were approaching, and that with this peril facing the plaintiff he did the best he could by swerving his truck to the right and putting on his brakes, and had no reason to believe that she was driving blindly into the intersection.

In *Leo* v. *Dunham*, 41 Cal.2d 712, 713 [264 P.2d 1], the court held that ordinarily when a person has been suddenly confronted with imminent peril, such is a question of fact to be submitted to the jury, and, at pages 715-716, ''For these reasons, it cannot be said, as a matter of law, that Dunham was negligent in failing to anticipate until the truck was some 60 to 80 feet from Leo that Leo was not going to yield the right of way. At that instant Dunham reasonably may be said to have been confronted unexpectedly with a sudden and imminent peril, and a deliberately calculated and cool choice was no longer possible. Accordingly, the record shows adequate basis for the instruction on imminent peril.'' There were no instructions on imminent peril in the present case.

This is further discussed in *Enos* v. *Norton*, 109 Cal.App. 19 [292 P. 276], at pages 23-24, where the court said: ''Plaintiff had a right to assume that defendant was not going to turn in front of him and cross his path without any warning signal. Under such circumstances, the sudden turning as though to cross plaintiff's path, without signal, constituted an emergency. In such an emergency plaintiff must determine his course at once and act on his choice. Whether or not such judgment in the light of after-acquired knowledge was the wisest or not cannot now be inquired into. Under such circumstances the determination of the trial court and its find-

ing thereon is conclusive. An unwise choice in an emergency does not in itself constitute contributory negligence. [Citations.] The rule as to the care necessary to use under such circumstances is 'the care that an ordinarily prudent person would have exercised under the same or similar circumstances.' (*Tousley* v. *Pacific Elec. Ry. Co.*, 166 Cal. 457 [137 P. 31, 33].)''

It is a question for the trial court to determine what a reasonable man would do under the circumstances and this court is bound by the facts determined by the jury (*Donat* v. *Dillon*, 192 Cal. 426, 429 [221 P. 193]). When there is conflicting evidence or when reasonable men might differ as to undisputed evidence, the question of negligence is one of fact, and not of law (*Packer* v. *Wagner*, 109 Cal. App. 26, 30 [292 P. 523]). Where more than one inference can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]). The court cannot, as a matter of law, substitute its judgment on the facts for that of the jury, and a finding can be disturbed only when there is no evidence to support it (*People* v. *Tedesco*, 1 Cal.2d 211, 219 [34 P.2d 467]). Contributory negligence, as a matter of law or a question of fact, is often a close one. Unusual circumstances may determine whether reasonable minds might draw different conclusions (*White* v. *Davis*, 103 Cal.App. 531, 542 [284 P. 1086]). ''. . . an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, . . . Every substantial conflict in the testimony is, . . . to be resolved in favor of the finding.'' (*Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140, 142 [134 P. 1157].)

Plaintiff's conduct is to be compared with that of an ordinary man and where, from the facts and circumstances, honest and impartial men might differ, such case should be submitted to the jury (*Smith* v. *Occidental etc. Steamship Co.*, 99 Cal. 462, 467 [34 P. 84]).

In *Muir* v. *Cheney Bros.*, 64 Cal.App.2d 55, 62 [148 P.2d 138], the court said: ''The question of a plaintiff's contributory negligence is usually one of fact, and becomes one of law only when the evidence is of such a character that it will support no other legitimate inference.''

The nearest factual situation that we can find comparable

to a divided highway, a frontage road and an incoming intersection, is the case of *Dawson* v. *Williams*, 127 Cal.App.2d 38 [273 P.2d 75]. In this case, there were two parallel streets which had traffic from both directions on both streets. The streets were 72 feet apart in which area there was located a railroad track. Another street bisected at right angles both of these parallel streets. This case refers to Vehicle Code, section 551 (now § 21801). Section 551 refers to the driver of an automobile making a left turn at an intersection (in our case the defendant was making a right turn in the intersection) yielding the right of way to a car approaching the intersection from the opposite direction and which is so close as to constitute a hazard at any time during the turning movement.

In the *Dawson* case, the first driver made a left turn from one of the parallel highways, went through the 72-foot intersection and collided with a car coming from his right in the adjoining parallel highway at its intersection. Justice pro tem. Mosk, in this case at page 42, quoting from *Washam* v. *Peerless Automatic etc. Co.*, 45 Cal.App.2d 174, 177 [113 P.2d 724], said: ". . . if such other car is not within the intersection, the motorist must complete his left turn only after he has cautiously estimated that the vehicle approaching from the opposite direction is not 'so close to the intersection as to constitute an immediate hazard.' If he miscalculates and a collision occurs, upon a trial of the resulting controversy, it is a fact to be determined from the evidence whether a reasonably prudent person in making the same turn would, under such circumstances have reached the same conclusion." We think this can work the same way for the car coming from the right which is approaching the intersection during the turning movement of the first car which originally was coming from the same direction as the other car.

*Washam* v. *Peerless Automatic etc. Co., supra,* also covers section 544 (now § 22107) of the Vehicle Code, at page 177, stating: "It will be observed from the language of section 544 that a left-hand turn on a public highway shall be made only when it can be done with reasonable safety. No definite distance from the turning vehicle is prescribed for the moving object which might interfere with safety. From the language of that section, it is to be concluded that the driver making the left turn must exercise that degree of care that should be exercised by a person of reasonable caution and prudence under the same circumstances. Whether the party making

the turn exercised such reasonable care was a fact to be determined by the trial court from all of the evidence in the case. If this were not so, the legislature would have prescribed a definite distance in yards or meters that a moving object must be from the turning vehicle before it could proceed to make a left turn.''

Defendants vigorously contend that the testimony of plaintiff established that, when his pickup was still 300 to 400 feet from the intersection he saw defendants' Oldsmobile commence its right turning motion; that the Oldsmobile proceeded at a slow, steady speed directly across his path, and plaintiff nevertheless continued on into the intersection until it was too late to avoid a collision. Had this been the entire testimony, defendants' arguments that such conduct constitutes negligence as a matter of law would be more persuasive. In view of positive but conflicting claims set out in the briefs relating to the testimony, we have read the entire testimonial record. There are inconsistencies as to the rates of speed, as to distances, and as to the positions of the respective vehicles at the time plaintiff first noticed the Oldsmobile. The mind of man being a fragile thing and the power of recollection imperfect, such inconsistencies in detailed testimony given at trial and relating to a happening long past are not unusual, and present a problem to be resolved by the trier of the fact. We are bound to view the evidence as a whole and in the light most favorable to the conclusion reached by the jury (*Butler* v. *Nepple*, 54 Cal.2d 589 [6 Cal.Rptr. 767, 354 P.2d 239]). There was competent testimony that plaintiff's pickup was traveling in its proper lane, at a lawful rate of speed, towing a trailer loaded with a large and heavy cow; that when plaintiff was still some 300 to 400 feet from the intersection he noticed cars traveling in a westerly direction on Highway 198, but did not specifically notice the Oldsmobile, and did not know whether it was on the highway or in the right turn lane; that he did see the Oldsmobile when it commenced the right turning movement; that as it moved, it slowed and he believed the driver would stop; that when he was approximately 40 to 45 feet from the point of impact, traveling at about 30 miles an hour, he sounded his horn; that he then, some 20 to 25 feet from the point of impact, realized that defendants' driver was not going to stop and immediately applied his brakes gently and swerved 2 to 4 feet to the right, but was unable to avoid the collision.

It is stated in *Dawson* v. *Williams, supra,* 127 Cal.App.2d 38 at page 41: "The law is clear that if there be evidence of facts supporting an inference favorable to the judgment, the reviewing court is without power to substitute its deductions for those of the trial court."

We further feel that under all the circumstances, the jury was amply warranted in finding that the defendants failed to prove by a preponderance of evidence the affirmative defense of contributory negligence and that the jury, as reasonable men, determined this to be the fact.

### Instructions

 Defendants contend the trial court committed prejudicial error in giving plaintiff's instruction No. 20, which embodies the statutory language of section 22107 (formerly § 544, subd. (a)) of the Vehicle Code, as follows: "You are instructed that a Vehicle Code Section in effect at the time of the accident herein involved, provided as follows:

" 'No person shall turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.' "

It is not claimed that the challenged instruction is, itself, erroneous. Defendants predicate their claim of error on the fact that the court failed to then give BAJI No. 142, which interprets and qualifies the strict statutory language. In support of their assignment of error, they argue that the instruction, as given, implies an absolute rather than a relative standard. They have referred us to several cases, all of which have been carefully considered. In *Butigan* v. *Yellow Cab Co.,* 49 Cal.2d 652 [320 P.2d 500], the court was construing the meaning of the code section—not considering the propriety of an instruction under attack. We are in accord with the statements there made, but do not consider the case determinative of the question before us. In *Powell* v. *Bartmess,* 139 Cal.App.2d 394 [294 P.2d 150], BAJI No. 142 was given by the trial court. The question for the appellate court's consideration was whether plaintiff in that case was entitled to another instruction to the same general effect, couched in different language. That case does not stand for the proposition that failure to give BAJI No. 142 constitutes prejudicial error.

Defendants' main reliance seems to be placed on *Lewis* v. *Franklin,* 161 Cal.App.2d 177 [326 P.2d 625]. In the cited case, the trial court instructed the jury that: "The Vehicle

Code of the State of California clearly places a duty upon the driver who contemplates turning upon the highway to first ascertain if such movement can be safely made, with reference to both front and rear, and if not to wait until it can be made in safety."

Elsewhere in the charge to the jury, it gave an instruction in the language of section 544, and, immediately following that instruction, BAJI No. 142. The reviewing court found prejudicial error in that the first instruction did not use the word "reasonable," and imposed upon Lewis a duty greater than that in fact imposed by law, i.e., the duty of reasonable care under the circumstances, which error was not cured by the giving of a conflicting instruction on section 544, followed by BAJI No. 142. There is some language in this case which tends to establish that an instruction using the language of section 544 should not be given without qualification.

In the case under consideration, defendants failed to request BAJI No. 142. As was stated in *Miller* v. *Cranston,* 41 Cal.App.2d 470 [106 P.2d 963], at page 478, "Appellants did not request a similar instruction. The court was therefore absolved of the duty of giving such instruction, even if applicable."

Defendants were therefore not entitled as a matter of right to an instruction in the exact language of BAJI No. 142. Even under the rule of *Lewis,* it is sufficient if some qualifying instruction is given. Examining the charge as a whole, it is noted that the court gave four consecutive instructions based on Vehicle Code sections, the first offered by defendants, the second and third (the challenged instruction) at the request of plaintiff, and the fourth on its own motion. Immediately following, the court gave, with minor modifications, an instruction offered by defendants, as follows:

"If a party to this action violated any one of the last four Vehicle Code Sections just read to you, a presumption arises that he or she was negligent. This presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable or justifiable.

"To prove that a violation of a statute such as that charged in this case was excusable or justifiable so as to overcome the presumption of negligence, the evidence must support a finding that the person who violated the statute did what might reasonably be expected of a person of ordinary prudence who

desired to comply with the law, acting under similar circumstances.''

Thus, the instruction complained of did not cast too great a burden upon defendants. It imposed upon the defendants' driver the duty not to make a turn unless and until it was reasonably safe to do so, and the standard set out in the qualifying instruction last above quoted is ''what might reasonably be expected of a person of ordinary prudence who desired to comply with the law, acting under similar circumstances.'' In short, the instructions, taken as a whole, are neither inconsistent nor contradictory, and correctly instruct the jury as to the ''reasonable man test'' which is the measure of negligence. Since from the evidence the jury could reasonably conclude that defendants' driver, unhearing, unseeing, and apparently uncaring, turned right across the intersection in the face of plaintiff's oncoming vehicle, and thus failed to act as a reasonable, prudent person, the instructions, as given, were proper.

### Were the Damages Awarded Excessive?

The defendants claim that the damages of $16,500 awarded to the plaintiff by the jury were excessive.

The plaintiff suffered multiple lacerations and contusions and injuries to his left knee. According to the testimony, the knee had bothered plaintiff ever since the accident. He has received considerable medical treatment and physiotherapy; had a surgical operation on the knee; his left leg was one-half inch smaller at the calf than the other leg; he was on crutches for a month after the operation and was able only to hobble around for a period of two months. Doctors for both the plaintiff and the defendants testified that they were of the opinion that plaintiff had sustained a torn meniscus or cartilage in the knee. However, the defendants' second doctor minimized the injuries after having examined him only once. Both doctors testified that another operation would be required and if not performed, the knee would be further damaged; that he would have to go back to the hospital for from five to seven days and be unable to work for a period of two or three months; and that there might be some permanent residuals in the knee, though his doctor said the second operation would be an exploratory operation. Plaintiff stated that he suffered frequent flare-ups of the knee joint; that he still had pain and stiffness in the knee and that it interfered with his work as a dairy farmer; that he was obliged to hire work that he did

himself prior to the injury and that he suffered pain and discomfort and his earning power had decreased. He further stated that it cost him $1,000 to replace the truck; that his medical and hospital expenses to the date of trial were $400; that he hired extra help which cost him $540; that his own services were valued at $1.00 per hour and his services per month would be valued at $360; and that he was unable to work for a period of four months; that a fair estimate of his lost earning capacity to the date of trial was $1,400; that a second operation would cost an additional $500; and that he would have his earning power impaired an additional $1,000.

The defendants cite no case authority in support of their position.

The rules governing a trial court applicable to ruling on a motion for a new trial, which this is not, and those governing an appellate court on an appeal from a judgment, are very different. An appellate court cannot reweigh and reassess the evidence beyond the point already ascertained. Its sole function is to determine whether or not there is any substantial evidence to support the verdict. (*Safina* v. *Safeway Stores, Inc.,* 150 Cal.App.2d 80, 87 [309 P.2d 470] ; *Holmes* v. *Southern Cal. Edison Co.,* 78 Cal.App.2d 43 [177 P.2d 32].)

The fixing of an amount which will fairly, reasonably and adequately tend to compensate for the loss suffered, and be reasonably certain to be suffered in the future is, of course, peculiarly within the province of the jurors.

In *Phillips* v. *Lyon,* 109 Cal.App. 264, 268 [292 P. 711], the court said: "The province of the jury to determine the amount of damages to be awarded as compensation for personal injuries should, however, not be interfered with unless it clearly appears their discretion has been abused."

It may be said here, as was said in *Johnston* v. *Long,* 30 Cal.2d 54 [181 P.2d 645], at page 76: "Nevertheless, it is not the function of a reviewing court to interfere with a jury's award of damages unless it is so grossly disproportionate to any reasonable limit of compensation warranted by the facts that it shocks the court's sense of justice and raises a presumption that it was the result of passion and prejudice."

Defendants failed to point to any testimony which indicates that the jury in this case was influenced by either passion or prejudice.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.