[Civ. No. 217. Fifth Dist. Aug. 20, 1963.]

GARY L. RAY, Plaintiff and Respondent, v. ALFRED C. JACKSON, Defendant and Appellant.

Docker, Docker, Perkins & Shelton and James H. Perkins for Defendant and Appellant.

Laurence B. Myers, Stutsman, Nagel & Ferrari and J. J. Nagel for Plaintiff and Respondent.

BROWN (R.M.), J.—Defendant appeals from a judgment entered on a jury verdict in favor of plaintiff for $18,000 and from an order denying a new trial. His motion for reduction of the verdict was also denied. The complaint is for damages for personal injuries. Defendant raised affirmative defenses of contributory negligence and assumption of risk.

Viewing the evidence in the light most favorable to the plaintiff and disregarding conflicts and contradictions, the facts are as follows:

On June 21, 1960, plaintiff, then 19 years of age, was employed by the National Park Service in Sequoia-Kings Canyon National Park. Plaintiff, a coworker, Gary Hogue, and their foreman, Lee Stiltz, were engaged in cutting trees and tree stumps which had been previously marked for removal by another crew. Plaintiff and Hogue were directed by Stiltz to block vehicular traffic on the General's Highway while Stiltz cut a diseased tree so located that it would constitute a hazard to travel if it fell across the highway. All traffic traveling in a general southerly and downhill direction was stopped by plaintiff; Hogue stopped all traffic traveling in the opposite direction. Both workmen wore aluminum safety hats. There is testimony that plaintiff had a flag. At some distance from the tree, signs were placed in the traveled portion of the road warning motorists to slow to 25 miles per hour. At each side of the tree a "Men and Equipment Working" sign was placed about the middle of the roadway.

Defendant, vacationing with his family in the park, traveling northerly in his Oldsmobile sedan with his wife and two

minor daughters riding in the car, came upon the stopped cars and halted in the line. Ahead of him were three or four stopped vehicles. He saw plaintiff and Hogue controlling traffic.

Stiltz instructed plaintiff to get some wedges from the pickup operated by the National Park Service which had been parked in a service road near defendant's stopped vehicle. Plaintiff started walking southerly toward the service road. It was then about 1:30 or 2 p.m. and the weather was clear and dry. Defendant pulled out of line into the southbound lane, passed the stopped vehicles and cut back into the northbound lane. Plaintiff saw defendant's car pull out of line, shouted to Hogue to stop defendant, and started waving his arms and flag and shouting to defendant to stop. Defendant did not see plaintiff, continued on and struck plaintiff causing injuries to his right knee and lower back area. At the time of impact the car was accelerating and its speed was about 20-25 miles per hour. Defendant continued on his way and that night at his campsite was given a citation for hit and run and for obstructed license plates. At a hearing before United States Commissioner Stone, defendant refused to plead guilty to this charge. The charge was reduced to driving without due caution and obstructed license plates, to which he pled guilty and was fined.

On this appeal defendant urges as ground for reversal (1) insufficiency of the evidence; (2) that prejudicial evidence was erroneously admitted; (3) error in instructing the jury; and (4) misconduct of a juror and irregularity in jury proceedings.

Defendant first contends that the evidence is insufficient to support the implied findings of negligence and lack of contributory negligence. This contention and the arguments made in support thereof constitute an attack upon the credibility of plaintiff and his witnesses and points out contradictions and conflicts in the evidence. We have carefully reviewed the record and find substantial credible evidence to support the judgment. The oft quoted rule, enunciated in *Behler* v. *Kunde*, 100 Cal.App. 731, 736 [281 P. 76], is applicable: "It is not the province of a reviewing court to present, by way of opinion, a detailed argument on the sufficiency of the evidence to support the judgment where it appears that the question is one purely of determining which side shall be believed. The trial court having determined this with the witnesses before it, the controversy is settled."

Defendant's further argument that plaintiff's witnesses contradicted their own testimony is answered by the rule that conflicts and inconsistencies in the testimony of witnesses are to be resolved by the trier of the facts "applies to conflicts and inconsistencies in the testimony of a particular witness" (*People* v. *Alonzo,* 158 Cal.App.2d 45, 47 [322 P.2d 42]).

Defendant next contends that the verdict of the jury awarding the sum of $18,000 is not supported by the evidence and the damages are "grossly excessive for the injuries plaintiff sustained." Plaintiff was 19 years of age at the time of the accident and 21 at the time of trial.

There is testimony that plaintiff sustained an acute low back strain and that the medial meniscus (cartilage cushion between knee joint and thigh bone) in the right knee was torn, causing swelling, pain and a locking of the knee joint. In July 1960 plaintiff was confined to a hospital for five days where he underwent surgery for the removal of the lacerated meniscus. From about June 25, 1960, until December 14, 1960, he was given physical therapy treatments consisting of water baths, lamp treatments, and applied heat, and engaged in a home exercise program for the purpose of alleviating discomfort and strengthening his knee. From approximately October 27, 1960, until December 14, 1960, he followed a physical therapy program of hot packs, massage and low back flexion exercises for the back injury. He was released for light duty on August 22 and for full duty on September 5, 1960. At least as late as January 12, 1961, he was still under the care of a physician. Prior to surgery, the torn meniscus caused the knee joint to lock until plaintiff grasped it with both hands and applying pressure caused it to "pop" or unlock. He testified that after the operation, he still experienced the sensation of a locking of the joint. At the time of trial he was still complaining of pain in the low back area and in the knee.

Dr. Raymond Knight, an orthopedic surgeon, testified in detail as to the nature and extent of plaintiff's injuries, the surgical procedure followed in the removal of the meniscus, and the post-operative treatment and therapy. This expert further testified that the medial meniscus is a natural cushion between the knee and thigh bone; that its removal has resulted in bone wearing against bone; that the knee would "wear out sooner" and that "there is a definite relationship between injuries to the inside of the knee joint, such as menis-

cus injury, and degenerative changes on the under surface of the kneecap"; and when the meniscus is removed, the knee is more susceptible to degenerative diseases. He also testified that the injury to the low back area was an acute back strain, involving a tearing of, or injury to, certain muscle fibers; that the muscle damage has resulted in inelastic scar tissue which would be "bothersome" with prolonged use; and that the residual fibrositis probably would be permanent.

Dr. Harold Jakes, who assisted Dr. Knight in the surgery, testified for defendant. He testified as to the plaintiff's injuries, the operation, and treatment given substantially as did Dr. Knight, but Dr. Jakes disagreed as to the extent and permanency of the residual injuries. The jury resolved all conflicts in the expert testimony in favor of plaintiff. In the exercise of its discretion the trial court denied defendant's motions for a reduction of damages and for a new trial.

The rules governing appellate review of a charge that damages are excessive are set out in *Torres* v. *City of Los Angeles,* 58 Cal.2d 35, at page 53 [22 Cal.Rptr. 866, 372 P.2d 906], as follows: "Because injuries are rarely identical in nature and the amount of pain and suffering endured as a result of similar physical injuries varies greatly, the extent of damages suffered cannot be measured by an absolute monetary standard. [Citation.] The determinations of the jury and trial court are therefore entitled to great weight and should be upheld whenever reasonably possible. [Citation.] As this court stated recently in *Seffert* v. *Los Angeles Transit Lines,* 56 Cal.2d 498, 506-509 [15 Cal.Rptr. 161, 364 P.2d 337], 'The amount of damages is a fact question, first committed to the discretion of the jury and next to the discretion of the trial judge on a motion for new trial. They see and hear the witnesses and frequently, as in this case, see the injury and the impairment that has resulted therefrom. As a result, all presumptions are in favor of the decision of the trial court [citation]. . . .

" '. . . Basically, the question that should be decided by the appellate courts is whether or not the verdict is so out of line with reason that it shocks the conscience and necessarily implies that the verdict must have been the result of passion and prejudice.' "

(See *Westcott* v. *Hamilton,* 202 Cal.App.2d 261, 276 [20 Cal.Rptr. 677].)

Measured by these rules and the testimony briefly recited above, we cannot say as a matter of law that the damages

awarded in this instance were excessive or that the trial court erred in denying defendant's motions for a reduction in the amount of damages and for a new trial.

 Defendant's further argument that the trial court erred in instructing the jury on the issue of damages for future disablement is without merit. It is not contended that the form of instructions is erroneous; the charge of error is founded on the theory that the instructions do not find support in the evidence. When the medial or inside cartilage of the knee is removed by surgery, there is a permanent impairment of the knee. (See *Mattina* v. *Conant*, 177 Cal.App. 2d 23, 24 [1 Cal.Rptr. 820].) Scar tissue in the low back area which is inelastic and which will cause future pain and suffering with prolonged use is a permanent injury. The giving of instructions on damages for future disablement is justified by the evidence.

 Defendant next asserts error in the trial court's ruling that a certified copy of docket entry showing the proceedings before the United States Commissioner including a judgment of conviction of the defendant on the charge of driving without due caution was admissible. It is argued that, while a plea of guilty is admissible as an admission, the judgment and penalty imposed after such a plea should have been excluded. The transcript of docket entry shows that defendant pleaded guilty on both counts, i.e., to the charge of driving without due caution and to the charge of driving with an obstructed license plate. A plea of guilty in a criminal prosecution is admissible in a civil action growing out of the same offense as an admission of a party against interest. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.*, 58 Cal.2d 601, 605 [25 Cal.Rptr. 559, 375 P.2d 439]; *Vaughn* v. *Jonas*, 31 Cal.2d 586, 595 [191 P.2d 432]; *American Fire etc. Service* v. *Williams*, 171 Cal.App.2d 397, 402 [340 P.2d 644]; *Burbank* v. *McIntyre*, 135 Cal.App. 482, 485-486 [27 P.2d 400].) In the last cited case the rule is stated at pages 485-486 thusly:

"It is a general rule that a judgment in a criminal prosecution may not be received in a civil action to establish the truth of the facts in which it was rendered, but an exception thereto is recognized where the defendant has entered a plea of guilty, such record then being admitted not as a judgment establishing the fact, but as an admission against interest."

 It is difficult to follow defendant's argument that the fact the transcript of docket entry also shows that defendant

was found guilty of the charges and fined a total of $55 was highly prejudicial. The fact that a judgment of conviction follows a plea of guilty to a traffic offense and a nominal fine may follow the judgment are matters of universal knowledge. Defendant testified fully on the subject. Defendant's reliance on the case of *Burbank* v. *McIntyre, supra,* 135 Cal.App. 482, in support of his statement that it is prejudical error to admit the record of a justice court proceeding for the reason that the judgment of conviction is not an admission is misplaced. The *Burbank* case does not stand for that proposition. Its holding is that testimonial evidence of the details of an arrest and mere intimations of a conviction are inadmissible where there is no showing that a plea of guilty was made. At page 486, the court flatly states: ''In the instant case the record before us is silent as to what plea was entered by defendant. It does not appear whether defendant entered a plea of guilty or whether he pleaded not guilty.'' That is not our case. Prior to the admission in evidence of the transcript of docket entry, which itself shows a plea of guilty, the defendant frankly testified without objection that he pleaded guilty to both charges. Subsequently in the trial defendant offered and there were received in evidence copies of both complaints which set out the traffic violations with which defendant was charged. The ruling was correct.

 Defendant offered an instruction which would have told the jury that it must ''view with caution'' the plea of guilty and must consider the circumstances under which the plea was made ''including the tendency of persons when confronted with a traffic violation to make the plea and accept a small fine for reasons of convenience.'' The court deleted the language just quoted. Where, as here, the defendant admits having pleaded guilty in the criminal prosecution, the admission then becomes a part of his own testimony and the ''viewing with caution'' rule vanishes from the case. (*Garibaldi* v. *Borchers Bros.,* 48 Cal.2d 283, 293 [309 P.2d 23].) The additional language deleted is taken from Witkin, California Evidence, section 225 [1961 Supp. p. 65]. It is an editorial note reflecting the author's pragmatic view and does not purport to be a statement of law. We are aware of no rule which permits a defendant to enter a solemn plea of guilty in a court of law and subsequently repudiate that plea when it is properly offered as an admission of the defendant in another court. The deletions were properly made.

·Defendant's contention that the trial court improperly allowed the plaintiff to retestify on his case in chief during rebuttal is devoid of merit. The plaintiff was permitted to explain matters which had been brought out by the defense after plaintiff rested his case. Defendant cross-examined him at some length. There is some repetition of answers previously given but that repetition is neither substantial nor prejudicial to defendant. Some repetition resulted from cross-examination. ■ The trial court is vested with discretion over the scope of rebuttal, and its ruling will not be disturbed on appeal unless a clear abuse of discretion is shown. (48 Cal.Jur.2d, Trial, § 110, p. 154; Witkin, California Evidence, § 566, p. 623.) ■ There is no showing of an abuse of discretion.

Defendant next contends that the court erred in reading to the jury during its deliberation and at the request of its forelady testimony given by Gary Hogue on direct examination, without also reading his testimony on cross-examination. ■ As this court said in *McGuire* v. *W. A. Thompson Distributing Co.*, 215 Cal.App.2d 356, 365 [30 Cal.Rptr. 113],

''Section 614 of the Code of Civil Procedure provides that if there is a disagreement among jurors during their deliberations as to any part of the testimony which they have heard they may return into court and secure from the court in the presence of counsel for all parties the desired information as to the record. [Citation.] If they ask for testimony relating to a specified subject, they are entitled to hear all of it. [Citations.] However, it is equally clear that the trial judge does not have to order read any part of the record which is not thus requested by the jury foreman. [Citations.]''

■ In the case under consideration Mrs. Davenport, the forelady, informed the trial judge the jury would like to hear Gary Hogue's testimony. The court instructed the reporter to ''read the testimony of Mr. Gary Hogue.'' Mrs. Davenport then stated the jury was really interested in just one part of Mr. Hogue's testimony and asked if they had to listen to the whole or could she explain what part they wanted to hear. Upon invitation of the judge, she then explained the portion the jury wanted to have read to it, which was contained in the direct examination. After the reporter concluded the reading of the direct examination, the following colloquy took place: ''The Court. Thank you, Mr. Reporter. Mrs. Daven-

port, is that the portion of the testimony that you desired read?

"Forelady Davenport. Yes, sir.

"The Court. Is there anything further that the jury wants at this time?

"Forelady Davenport. No, sir."

It is clear that the jury had no interest in hearing read the testimony elicited from Mr. Hogue under cross-examination and the court was under no duty to order that testimony read to the jurors. ▮ Defendant did not request that any other portion of testimony be read, nor did he make any objection or comment whatsoever. He is precluded from raising the objection on appeal. (*McGuire* v. *W. A. Thompson Distributing Co., supra,* 215 Cal.App.2d 356, 368.)

Defendant also makes a broadside attack upon numerous other instructions given or refused by the court. We do not deem it necessary to burden this opinion with an analytical inquiry into the instructions proffered by defendant and rejected and those given by the court for the purpose of showing, as it may thus be shown, that there was no error. The principal complaint seems to be that the court preferred instructions drawn in the language of the authors of California Jury Instructions, Civil, rather than the versions offered by defendant. ▮ While it is true that each litigant is entitled to have instructions submitted to the jury on all of his theories of the case which find support in the pleadings and the evidence, and it is incumbent upon the trial court to instruct on all material issues involved (*Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33]; *Sills* v. *Los Angeles Transit Lines,* 40 Cal. 2d 630, 633 [255 P.2d 795]), it is equally true that the court is not required to give every instruction offered by a litigant nor to instruct in the language selected by him (*Newton* v. *Thomas,* 137 Cal.App.2d 748, 767 [291 P.2d 503]). ▮ Nor is a party "entitled to have the substance of instructions given by the court repeated in different language" (*Hayes* v. *Harry,* 183 Cal.App.2d 412, 417 [6 Cal.Rptr. 671]). All of the vital issues involved in this case were fairly and fully covered by the instructions given, and the instructions proffered by the defendant and rejected by the court added nothing thereto.

▮ Defendant next contends that a juror, one Virginia Davenport, who was subsequently elected forelady, was guilty of misconduct in that she concealed bias and prejudice by false

answers on *voir dire*. At that time she stated that her brother
and sister-in-law had been injured in an accident; that their
claim for damages was settled for an amount of money which
she believed was satisfactory to them; that she had not kept
in close touch with the transaction; and that she felt she
could render a fair decision in this case. Upon motion for
new trial, defendant presented a declaration of a dissenting
juror, Mrs. Lillian Adney, which states that, during the course
of the trial, Mrs. Davenport told the declarant she ''was al-
ways for the underdog''; that she ''led the undersigned to
believe that she knew considerably more about the accident
in which her relatives had been involved than she had pre-
viously disclosed''; that she felt her relatives had not received
a sufficient settlement; and that the affiant believed Mrs.
Davenport was prejudiced. No evidentiary facts are stated
to support the conclusions. Mere statements that the declarant
''believed'' a juror was prejudiced, or that she was ''led to
believe'' something are worthless conclusions. It does not
appear at what point during the trial Mrs. Davenport stated
she was for the ''underdog,'' nor does it appear which liti-
gant, if either, she considered in that light. This declara-
tion is a slender reed to choose as a weapon for the purpose
of overturning the solemn verdict of a jury. It constitutes
an insufficient showing that Mrs. Davenport concealed a biased
or prejudiced state of mind by giving false answers on *voir
dire* warranting a new trial.

 Defendant also presented the declaration of a juror,
one Donald Vossler, which states that he voted for the defend-
ant on the issue of liability on the first ballot; that during fur-
ther deliberations he was informed by other jurors that since
he had deliberated with them on the issue of damages the
majority verdict was his. Accordingly, when the jury was
polled he answered in the affirmative which he now states was
an erroneous answer based on an erroneous assumption that the
verdict of the majority bound him.

The record discloses that the court properly instructed that
each juror was entitled to exercise his personal judgment and
had the right and duty to vote in accordance therewith even
if the majority differed. When the jury was polled in open
court at the time the final verdict was rendered there was a
9 to 3 ballot in favor of plaintiff. At that time Mr. Vossler
stated that the verdict was his. Thus the verdict was regular
on its face.

The rule is firmly established in California and was re-

cently reaffirmed by the Supreme Court in *Sopp* v. *Smith*, 59 Cal.2d 12, 14 [27 Cal.Rptr. 593, 377 P.2d 649], that affidavits of jurors may not be used to impeach or set aside their verdict unless it be shown that a juror has concealed bias or other ground of disqualification by false answers on *voir dire.* (*Kollert* v. *Cundiff*, 50 Cal.2d 768, 773 [329 P.2d 897]) or that the verdict was reached by lottery (Code Civ. Proc., § 657, subd. 2). The declaration of Mr. Vossler does not fall within either exception to the rule of nonimpeachment. Denial of a new trial was justified.

The attempted appeals from the verdict and the order denying a new trial, which are nonappealable, are dismissed. The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied September 16, 1963, and appellant's petition for a hearing by the Supreme Court was denied October 16, 1963.